# Wilhelmina Schmidt's Estate. Appeal of Caroline Becker and Mary Becker.

*Executors and administrators—Will—Disqualification by reason of interest.*

Where a son claims securities under his father's will, while his two sisters allege that the securities are a part of their mother's estate, in which they have a share, and there is an unfriendly feeling between the brothers and sisters, and both sons are disqualified to administer upon the estate, letters of administration on the mother's estate will be granted to a stranger rather than to the daughters.

Argued Oct. 18, 1897. Appeal, No. 48, Oct. T., 1897, by Caroline Becker and Mary Becker, from decree of O. C. Washington Co., Aug. T., 1896, No. 35, on appeal from register of wills. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from register of wills.

The facts appear from the opinion of TAYLOR, J., which is as follows:

This is a contest between the four children of Charles and Wilhelmina Schmidt, deceased, for letters of administration upon the mother's estate. Arrayed on the one side are Charles Schmidt and Francis E. Schmidt, the two sons, and on the other Caroline and Mary Becker, the two daughters, intermarried with George and John Becker, and the appellants in this proceeding, to reverse the register of wills in refusing to grant letters to them. The oldest son, Charles Schmidt, the executor named in his father's will, and acting as such, resides in the city of Wheeling in the state of West Virginia, and does not ask for letters upon his mother's estate, being a nonresident. Francis E. Schmidt, the other son, applied for letters of administration on his mother's estate and they were, by the register of wills, issued to him, and he proceeded to discharge the duties of this appointment. Caroline and Mary Becker, his sisters, filed a caveat against the granting of letters to their brother Francis, and appealed to the orphans' court, June 30, 1896, to have the letters issued to Francis revoked and letters of admin-

istration on said estate issued to them.   After hearing had be-
fore the court, on September 25, 1896, the orphans' court filed an
opinion and decree to No. 43, May term, O. C. 1896, revoking
the letters heretofore issued to the said Francis E. Schmidt, for
the reason that under the will of his father he had an interest
antagonistic to the interest which he acquired by the letters of
administration, and was therefore disqualified.   At the same
time the court refused to grant letters of administration on the
estate of Wilhelmina Schmidt, deceased, and it appearing that the
appellants had already made application to the register for a grant
of letters to them, and that Francis had filed a caveat against
the granting of letters to them, which matter had not reached a
hearing before the register when hearing was had, on appeal, to
revoke letters issued to Francis, the court in said opinion, a
copy of which is filed with this opinion, as a part of the history
of the proceedings and containing a suggestion manifestly for
the interest of all parties concerned, referred the granting of
letters again to the register, after a hearing on the application
of the appellants before him, and upon said hearing refused let-
ters to the appellants here to have his actions in refusing letters
to them reversed.   At the hearing before the court to revoke
letters to Francis Schmidt, the testimony was taken in open
court and afterwards written out in longhand by the ste-
nographer.   The contention between these devisees and legatees
under the will of their father, Charles Schmidt, deceased, was
gone into at length.   It appeared that the appellants were seek-
ing to have the letters testamentary on the estate of their father
issued to Charles Schmidt, Jr., also revoked in another proceed-
ing.   It was then, and is now, manifestly clear to the court, that
the daughters of these two deceased parents are seeking to wrest
the settlement of these estates from their brothers in order that
they may themselves be clothed with power to administer.   The
claim of the appellants is that Francis and Charles being incom-
petent or disqualified,—Charles being a nonresident and Francis
from an interest antagonistic to his mother's estate derived
through his father's will, that they standing in the first class
are next entitled to letters of administration unless there is a
satisfactory evidence of their unfitness.   That this is the law
we do not doubt.   It then becomes a question in what does this
unfitness consist.   That these applicants for letters are under

coverture and not the owners of any real estate, and personal property only to a limited extent, has no weight with us in determining this question. They have certainly a prima facie right to priority of administration, but they may be controlled by evidence of incompetence, or unfitness from circumstances, say the court in the cases of Hassinger's Appeal, 10 Pa. 454; Marshall's Appeal, 2 Pa. 388. What is understood to be the meaning of unfitness from the circumstances? On an appeal from the decision of the register in granting (or refusing to grant) letters of administration, we look at the whole cause on the merits and the rights of the respective parties, without regard to all the alleged irregularities, say the court in Bieber's Appeal, 11 Pa. 161, and in deciding this case we have been governed by this principle.

Charles Schmidt, Sr., died on February 15, 1892, testate; his widow Wilhelmina Schmidt died April —, 1896, intestate. Charles Schmidt's estate consisted of about sixteen acres of real estate, personal property and money. By agreement of the widow and these four children of deceased, shortly after his death, no appraisement was filed, and the widow filed her election to take under the will. It is conceded that at time of the husband's death the widow had no separate estate, except less than $100 in money and personalty. By the will of Charles Schmidt he bequeathed to his daughters Caroline and Mary Becker, the appellants, the sum of $1,500 each, which they admit was paid to them as said testator directed. To his wife Wilhelmina, during her natural life, all of the rest, residue and remainder of his estate both real, personal and mixed; to his son Charles $3,000 payable to him on the death of his mother. After his wife's decease, he devised and bequeathed to his son Francis his home farm, together with the appurtenances, fixtures, implements and all other articles, goods, chattels, etc., remaining upon said farm and belonging to his estate, and to his heirs, he further stipulated in said will: "It is my will and purpose that whatever money or profits may be made out of my estate bequeathed to my beloved wife by me as aforesaid, the same shall belong to her, and may be disposed of by her in such manner as she may wish or desire," and appointed his son Charles Schmidt, his sole executor thereof. At the time of his death, the said Charles Schmidt had notes and certificates of

deposit for about $3,000 in his own name, and his executor lifted them and had them reissued or assigned to his mother in order that she could receive the income thereof under the will. At the death of the widow, these notes and certificates of deposit were turned over to Francis Schmidt, to whom letters of administration were issued (afterwards revoked by the court), and residuary legatee and devisee under the will of his father. There were some wine stocks on hand at death of Charles Schmidt. Shortly after his death the mother leased the sixteen acre grape farm and all personalty, etc., to her son, Francis, who continued to operate the same, she living with him, until her death. Francis Schmidt claims these notes and certificates of deposit left by his father, the income of which went to the mother, under the residuary clause in the will to him. [The two daughters, appellants here, and asking for letters, claim that they are entitled to share in these notes and certificates of deposit as heirs at law of their mother's estate. This is the principal contention between these children. The sons claim these moneys belong to Francis under his father's will, and the daughters claim to share in it as a part of their mother's estate.] [1] Letters to Francis were revoked because this claim whether well founded or not was antagonistic to his mother's estate. The claim of the appellants that this money, evidenced by these notes and certificates, belongs to the mother's estate, whether well founded or not, with the state of unfriendly feeling and hostility existing between these brothers and sisters and their husbands, satisfies the court that administration on the estate of Wilhelmina Schmidt should be conducted by an entirely disinterested and unconnected person with the estate or parties. Having revoked the letters heretofore issued to Francis, though his legal disqualification may have been, and is now, perhaps, greater than that of his sisters, the estates of Charles Schmidt and that of his widow are so commingled and blended, the widow deriving that which now forms the basis of this unfortunate. condition of things between these children, from her husband's will, these estates may be said to be antagonistic to each other so long as these antagonistic claims are made,—that having deposed Francis from settling the estate, it would be manifestly unfair and partial to give one claimant a single point or position of advantage over the other, as the

issuance of letters to the daughters in this case would undoubtedly be.

"Where it is clear that the relations between the administrator and the legal representatives of a decedent are not harmonious, and it is manifest that the interest of the administrator is adverse to those of such representatives, nothing but some controlling necessity will justify his retention as administrator:" Kellberg's Appeal, 86 Pa. 129. While the interests of the appellants may not be adverse to the estate of their mother, it certainly is to that of Francis in his father's estate, from whose estate alone the mother derived the corpus now in controversy. [If letters were granted the appellants it could not be claimed that the relations between them as administrators, and the other two children—legal representatives (for Charles is resisting letters to the sisters on the same grounds as Francis), were harmonious with the other legal representatives of the deceased.] [2] Following again the opinion of the court, as we did in revoking the letters to Francis Schmidt, in Hassinger's Appeal, 10 Pa. 454, which contained facts and circumstances not wholly unlike the one before us, we are of the opinion and so find, that both the brothers and the sisters with their husbands, are in contest for the administration of the mother's estate, the husbands standing with their wives, and the two brothers standing together resisting them: "and it ought to be committed to an impartial stranger to them, who alone would have their confidence, or would, perhaps, deserve it:" Hassinger's Appeal, supra. This opinion was expressed when letters to Francis were revoked on application of these two appellants, and in sustaining the register and dismissing the appeal it must be at the costs of the appellants.

[Now, January 18, 1897, this cause came on to be heard and was argued by counsel, and upon due consideration thereof, the appeal of Caroline and Mary Becker from the decree of the register of wills in refusing to grant letters of administration to them on the estate of Wilhelmina Schmidt, deceased, is dismissed at the costs of the appellants, and decision of the register in said case affirmed.] [4].

*Errors assigned* were portions of the opinion and decree as above.

*T. F. Birch,* for appellants, cited Shomo's Appeal, 57 Pa. 359; Kellberg's Appeal, 86 Pa. 129; Hassinger's Appeal, 10 Pa. 454.

*W. S. Parker,* with him *Winfield McIlvaine,* for appellee, also relied on Kellberg's Appeal, 86 Pa. 129, and Hassinger's Appeal, 10 Pa. 454; and also Silberman's Estate, 14 W. N. C. 259.

PER CURIAM, October 25, 1897:

We find no error in the decree from which this appeal was taken.

The questions involved appear to have been carefully considered and correctly disposed of by the learned judge of the orphans' court, and on his opinion the decree is affirmed and appeal dismissed at appellants' costs.