**Frederick Oren Dennis and Joseph Piland, Appellants,
v. J. Edward Dennis, Appellee.
In re Estate of Cora B. Dennis, Deceased.**

Opinion filed May 26, 1944.

PYLE & McCALLISTER, of Carmi, for appellants.

KERN, PEARCE & PEARCE, of Carmi, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Everett Seymore Dennis of the Village of Crossville, White county, Illinois, died testate on the 31st of March 1941, leaving his widow, Cora B. Dennis, and two sons, Jacob Edward Dennis and Frederick Oren Dennis. In his will Dennis gave Jacob his stock in the Crossville bank, and the remainder of his estate was given to his wife for life with the remainder in its entirety to his son Jacob. Frederick received nothing under this will. The Dennis estate was a substantial one, consisting of 1100 acres of land with 33 producing oil wells, considerable personal property, and more than $45,000 accumulated royalties emanating from the oil field.

On October 20, 1941, Cora B. Dennis filed in the office of the clerk of the county court of White county a renunciation in writing of her husband's will, whereby she became the owner of one third of all personal property and of an undivided one-third interest in all the real estate of which E. S. Dennis died seized. Later, the widow, Cora B. Dennis, feeling keenly the injustice of her son Frederick being disinherited under his father's will, made her will, leaving everything to her son Frederick. The language employed by her in doing so is as follows: "I am

making this will fully conscious of the fact that I have another son, Jacob Edward Dennis, and I am giving him none of my estate by reason of the will of my deceased husband, favoring him to the exclusion of our son Frederick Oren, and it is my desire, as far as the power lies within me, to make up to our said son, Frederick Oren Dennis, the inequality created by the will of my deceased husband, their father.'' Under this will Frederick was appointed executor to serve without bond.

The will of E. S. Dennis was admitted to probate on the 10th day of May 1941, and letters of administration on his estate with the will annexed were issued to Jacob E. Dennis on May 12, 1941. Cora B. Dennis died on February 19, 1943, and on March 22, 1943, Jacob E. Dennis filed in the county court of White county his petition for his appointment as administrator of her estate. On the same day, the will of Cora B. Dennis was filed, accompanied by the petition of Frederick that he be appointed executor, as provided in said will.

At the May term of the circuit court of White county, 1941, Frederick Dennis was convicted of assault with the intent to commit murder, and was committed to the Illinois penitentiary at Menard, Illinois. On March 22, 1943, the will of Cora B. Dennis was admitted to probate, and the court feeling that since Frederick had to be away from home for some time, he would not be a fit executor and denied his petition for his appointment.

On March 25, 1943, Frederick filed another petition asking the appointment of Joseph Piland as administrator of the estate of Cora Dennis with the will annexed. Judge SCOTT of Saline county was called in on April 8th to decide the controversy between Jacob and Frederick as to whose petition for the appointment of administrator should be allowed. The petition of Jacob was denied and the nominee of Frederick, Joseph Piland, was appointed, and letters of adminis-

tration with will annexed were issued to him on April 29, 1943. From this action, Jacob appealed to the circuit court of White county. On a trial *de novo*, the circuit court on June 1, 1943, reversed the order of the county court and ordered the appointment of Jacob as administrator of the estate of Cora Dennis with the will annexed. The propriety of this order is presented to this court for determination on this appeal.

Upon the trial of this cause before the circuit court, Jacob Dennis testified as follows: that he had been administrator of his father's estate for more than one year and nine months; that he had never rendered an accounting to the county court; that prior to becoming administrator he had been conservator of his father; that he didn't consider Joseph Piland qualified, although he admitted that he didn't know much about him; that he was not aware of the fact that Piland owned his own farm and several properties in Crossville; that he didn't think he had had any experience in handling securities and investments. Jacob further testified that he had been one of the cashiers of a bank, and for 19 years had been in the banking business.

That we may appreciate at the outset the reasoning that prompted the county and circuit courts to arrive at opposite conclusions, we will quote briefly from their pronouncements. Quoting from the order of the county court entered on the 24th day of April 1943: ''That after the hearing of said evidence, and an examination of said exhibits, so presented in open court, and hearing the arguments of counsel, the court having considered the cause, finds that an ADVERSITY OF INTERESTS exists between Jacob E. Dennis and Frederick Oren Dennis and that Frederick Oren Dennis is the sole devisee and legatee under the terms of the will of the said Cora B. Dennis, deceased, and that the said Jacob Edward Dennis now has in his hands substantially all of the assets belonging to the estate

of Cora B. Dennis, holding said assets as administrator of the estate of E. S. Dennis, said E. S. Dennis having been the husband of Cora B. Dennis, who predeceased her.'' The circuit court, in passing upon the merits of this issue, ordered that his remarks should stand as a part of the record. Quoting therefrom: ''I have looked at the county court's order. He found that the interests of the two brothers were so opposed to each other that he selected a stranger as administrator with the will annexed for the mother's estate. I can't bring myself to think they are opposed. The father had the right to make his will the way he wished, and the mother had the right to make her will the way she desired. The respective beneficiaries under the wills being brothers, this would not necessarily oppose, in the meaning of the term, because under the will, each take. That is all there is to it. And until the will is set aside or something, at least for the present remarks, we assume that each takes under the respective wills. As far as personal feelings are concerned, that is a different matter. I don't see how we can say the interests are opposed or in conflict. . . . So I can't reconcile myself to the thought that there is such opposition of interests between these two brothers so far as the assets of the estates are concerned. There may be a great conflict as to the personal feelings, but when it comes to a conflict of the interests to be administered upon, I don't see any conflict at all.''

There seems to be very little controversy as to the factual situation involved herein, and it might be added there is very little law in Illinois that definitely points out the answer to the legal questions presented.

It is conceded by counsel for both appellee and appellant that a nominee of one of a class entitled to appointment does not have the same standing as the one nominating him, and as against others of the same class is not favored. That is to say, the nominee of Frederick Dennis does not have the same standing as

Frederick as against Frederick's brother, Jacob Dennis. In the cases of *In re Estate of Marco,* 314 Ill. App. 560 and *Justice v. Wilkins,* 251 Ill. 13, the above proposition of law is clearly sustained. The appellee in their brief say in closing their argument, and referring to the two cases indicated above: "These two cases confront us as the leading, final and conclusive authority upon the issues here presented."

The appellant concedes it to be the law that a nominee of one of a class has no claim to administer an estate as opposed to another member of that class, but contends that Jacob Edward Dennis is not qualified because of his hostile, adverse and conflicting interest which render him unsuitable. That was the issue argued and decided by both the county court and circuit court. The county court held that there was such a hostility between the two boys and such conflict of interest that a stranger ought to be appointed. The circuit court held, that even though there was a hostility of feeling between the boys, that such does not necessarily mean a conflict that should forbid the appointment of Jacob Edward.

The general rule laid down in Horner's Probate, volume I, page 136; "Where several persons are claiming and are equally entitled to administer or to nominate an administrator a large discretion must necessarily be left to the court appointing, and if any choice is permitted by the statute, one who has a special interest opposed to the interests of the other heirs shall not be appointed."

This rule seems to have support in the cases of *Heward v. Slagle,* 52 Ill. 336, and *Justice v. Wilkins,* 251 Ill. 13. At page 338 in the *Slagle* case the court said: "At the death of Dillon, Slagle became surviving partner, and should never have been appointed administrator on the estate, because, as such survivor, he became accountable to the estate, and could not well account to himself as one of its representatives.

There was a positive wrong done in so appointing him.''

In the *Wilkins* case a nominee of one of a class had been appointed and others of the same class were contesting the appointment. For reasons heretofore pointed out the court held the appointment bad, but said at page 17: ''It is insisted by appellants that the present administrator, for several years before the death of Sea Bird Wilkins, had practically entire control of the property of the deceased. It is also insisted that he has not returned a proper inventory of the estate and that he has in his possession assets belonging to the estate. If the facts support these contentions, Demalian Justice is not a proper person to administer the estate.''

Volume I of A. L. R., page 1250, under heading, ''That one of the applicants has interests which might conflict with his duty is a reason against his appointment'' the following cases are cited: *Pickering v. Pendexter,* 46 N. H. 69; *Moore v. Moore,* 12 N. C. 352; *Spencer's Estate,* 7 Pa. Dist. R. 216; *Davis v. Swearingen,* 56 Ala. 539; *Stines v. Brock,* 185 Ill. App. 22.

In the case of *Stines v. Brock, supra,* a man and wife died leaving two daughters. The father's estate consisted principally of a note of the husband of one of the daughters, and the mother's estate consisted of only her share as widow in the estate of the husband, and the other daughter intended to file a claim against the mother's estate for services rendered. The court held that it was proper to appoint one daughter administrator of the father's estate so that she could see that the note was collected, and to appoint the other daughter administrator of the mother's estate so that she could properly resist the claim of the sister.

*In re Estate of Schmidt,* 183 Pa. 129 there was a controversy over the appointment of an administrator for a deceased widow's estate. It appeared that her

two sons claimed that certain notes and certain certificates of deposit left by the father, or the proceeds thereof, belonged to one of the sons, while her two daughters claimed that the same were part of the mother's estate, in which they had a share. That there was an unfriendly feeling between the brothers and sisters and their husbands, it was held that both the sons were disqualified to act as administrators and letters should be issued to a stranger rather than to deceased's daughters.

In the case of *In re Drews' Appeal*, 58 N. H. 319, 320–321, there was a violent quarrel between son and daughter, arising from the belief on his part that she had fraudulently obtained a mortgage from the intestate to secure unjust claims against the estate. The quarrel was so bitter that mutual complaints for arrest were made, and the feeling was so great as to disqualify either from fairly considering the claims of the other, and would probably lead to abuse of any power either might have over the other. Both were found incapable of administering because of hostile feeling. The statute says that no person should be appointed who is "incapable." This term includes unfitness and unsuitableness and a feeling of hostility so intense as to cause one to resist with physical violence the claims and rights of others, in common with him, not only renders him unfit for, but also incapable of managing the common interest. The claim of Sarah against the estate is disputed by the other heirs. The interest of her claim, and feeling engendered by the dispute, rendered her incapable of properly executing the trust. The law does not encourage a private or family feud. Neither of the contending parties should be intrusted with the power of administration, because there is reason to fear their animosity would lead to an abuse of the trust.

The case of *Davis v. Swearingen*, 56 Ala. 539, 541, the first estate has been long pending and unsettled, and

the estate in question comes from that estate which was decedent's father, and decedent's son had failed within the proper time to make application as administrator, yet he is entitled to be appointed although he failed to act within the statutory time. This is his mother's estate, and he is entitled to a preference over the other claimant. The fact that the father of the third party claimant was the administrator of the estate which has been long pending and unsettled, and will have to account to the personal representative of the estate of his mother, is reason why he should not be appointed.

The English authorities seem to favor the view that the one having the greatest interest in the estate should be favored. *Elwes v. Elwes,* 2 Lee Eccl. Rep. (Eng.) 573.

The case of *Clark v. Patterson,* 214 Ill. 533, which is cited in appellant's brief pertains to the right of a court to remove an executrix because of hostility of interest. The facts in the case are as follows. The decedent appointed two other executors besides Miss Patterson. Objections were made to her appointment. The proof showed that Miss Patterson had been the secretary of the decedent and had lived clandestinely with him for many years. It was alleged that this caused considerable ill feeling and jealousy between her and members of the family, and that because of her immorality the other representatives of the estate could not act with confidence and without restraint. It was also alleged that she had been given some property by the decedent that might be a subject of contest. The court held that this last charge was only vaguely made and not proven, and in addition held, "If the person nominated by a testator as executor of his last will be 'legally competent,' the court cannot on objection filed, cause an issue to be formed and enter upon an investigation of alleged moral delinquencies of such person and refuse to grant letters to

a person whom the testator has chosen to manage his property and execute his will on the ground such person has been guilty of sexual immorality.'' The issue in this case was the propriety of an order to remove, whereas, in the instant case it is what may be properly considered in making an appointment. The testator who made the appointment in the *Patterson* case, knew pretty well about the sins of his appointee, and notwithstanding such knowledge, charged her jointly with two others with the responsibility of administering his estate. We are of the opinion that this case affords little assistance with our problem.

Corpus Juris in volume 23, page 1047, states that unsuitableness to administer may consist in adverse interest of some kind, or hostility to those immediately interested in the estate whether as creditors or distributees, or of an interest adverse to the estate itself. It is apparent therefore in view of the foregoing authorities that the right to be appointed administrator is not an absolute one and the question of fitness is proper to be considered.

In light of the principles of law outlined above let us consider the facts in this case. Jacob Dennis, apparently, has been highly favored in life. He inherited the brains, and possessed the energy and ambition to obtain a college education. He was industrious, honest and dependable and has had a highly successful career as a banker and business man. Frederick, on the other hand, was not so fortunate. His life seemingly has been beset with one failure after another. In the same degree that his brother has lived an honorable and successful life, Frederick has lived a dishonored and unsuccessful one. Not only did Jacob inherit all the brains and character, but when his father died, he inherited all the property. Frederick got nothing. Frederick's mother, in an effort to compensate for this apparent injustice, renounced under the will and made

a will herself giving Frederick everything, and appointing him executor. But Frederick at the critical hour when he might have become executor was residing in the southern Illinois penitentiary at Menard, and could not serve. But Jacob, before he knew that his mother had left a will, rushed into county court to have himself appointed administrator, and then when he discovered there was a will, and that his brother Frederick could not serve as executor, wanted to be appointed administrator with the will annexed, and so petitioned the court.

That there was and is a very, very bitter and hostile feeling between the two brothers is an agreed fact. Frederick did not want Jacob to have anything to do with the estate his mother had left him. The mother did not want Jacob to have anything to do with her estate or have any part of it, else she would have said so in her will. Frederick wanted someone other than his brother to administer his mother's estate, someone in whom he would have confidence, someone he could trust during his long period of absence. Frederick knew that his brother hated him; Frederick knew that his brother was selfish and avaricious, otherwise he would not persist in injecting his undesired presence in an estate from which he inherited nothing; Frederick knew that all of the estate of his father was still in the hands of his brother and that he had been collecting all of the rents from the thousand acres of land and all of the royalties from the 33 producing oil wells; Frederick knew that Jacob with little excuse and flimsy explanation had never made an accounting to his mother or the county court, and that he had been in control for about two years; Frederick knew that his mother in order to know the status of this vast estate, was required to file a petition in the county court to compel his brother to make a report; Frederick knew that his mother had renounced his father's will, and that, sometime sooner or later, his mother's one-third interest would be carved out of his father's estate,

and that the part set off to his mother would be his under his mother's will, and what remained would become the property of his brother. Frederick knew that he wanted a fair division, and that he would be better pleased if someone representing his interests would be present at the carving along with his brother, Jacob; Frederick further knew that if his mother's estate was not watchfully and honestly protected by someone loyal to his interests while he was away, it might be greatly reduced in value; Frederick knew that the administrator's fees in his mother's estate would be substantial, and that he would prefer they be paid to someone other than Jacob. Consequently, Frederick was convinced that Jacob was the last person on earth that he wanted to see appointed to administer his mother's estate. We cannot censure Frederick for having certain misgivings about the motives of his brother. A court may well consider the desirability of improving the relationship between these boys by appointing a competent disinterested representative of the estate, and thus contribute much toward terminating the discord, strife and "bad blood" that seems to prevail between the two. Toil as you may, your imagination could hardly manufacture a case where there is greater hostility, adversity and conflict of interest. It seems evident to us that Frederick's nominee should be appointed as administrator with a will annexed in this case. No doubt, the circuit court, knowing his appointee to be a man of eminence, education and experience felt that he would serve faithfully and well but in view of the tremendous conflict of interest between Jacob and Frederick, we are compelled to hold that the appointment of Jacob Edward Dennis as administrator with a will annexed to the estate of Cora B. Dennis is improper and this cause is reversed and remanded to the circuit court of White county with directions that he appoint a nominee of Frederick Oren Dennis.

*Reversed and remanded with directions.*