*In re* ESTATE OF ALFREDO ROSELLI, Deceased.—(VINCENT ROSELLI *et al.*, Petitioners-Appellants, *v.* LUIGI ROSELLI, Respondent-Appellee.)—*In re* ESTATE OF ALFREDO ROSELLI, Deceased.—(JOHN PANICI, Claimant-Appellee, *v.* LUIGI ROSELLI, Adm'r of the Estate of Alfredo Roselli, Respondent-Appellant.)

First District (4th Division)    Nos. 77-1395, 78-730 cons.

Opinion filed March 8, 1979.

Eugene L. Shepp, of Chicago, for appellants Vincent Roselli and Ida Valenti.

Anthony Scariano & Associates, P. C., of Chicago Heights, for appellant-appellee Luigi Roselli.

John Panici, of Chicago, for appellee, *pro se.*

Mr. JUSTICE ROMITI delivered the opinion of the court:

The case, as it appears before this court on appeal, actually is composed of two separate appeals from proceedings involving the administration of an estate, the cases being consolidated upon appeal. The first appeal was from the appointment of one of two petitioning nephews as administrator. The issues before us in that case are (1) whether the judge erred in denying a petition for change of venue and (2) whether the judge erred in refusing to allow evidence as to which of two equally preferred heirs was "better" and in appointing one heir administrator because most of the heirs (although not a majority of those permitted by section 9—3 of the Probate Act of 1975 to nominate an administrator) (Ill. Rev. Stat. 1977, ch. 110½, art. IX, par. 9—3) chose him. The sole issue in the second appeal is whether the trial court erred in allowing attorney's fees to the attorney of the unsuccessful petitioner, that attorney having represented the decedent before his death and the estate afterward until the contest over which petitioner should be administrator arose.

It all began on September 6, 1976, when Alfredo Roselli died. Alfredo, while having no children of his own, was a member of a large family; his parents had 10 children. Of these only one son was living at the time of Alfredo's death, and he died shortly thereafter. Alfredo's heirs are eight nephews and nieces and one great nephew and two great nieces; of the eight nephews and nieces, two lived in Italy and one in Canada.

From 1942 until just before his death, Alfredo Roselli lived on Rutherford Street in Chicago. His assets, consisting solely of cash, were deposited in banks in Cook County. About a month before he died he sold his house intending to travel to Italy; he did, however, intend to return to Cook County to live. During the period before the date on which he intended to leave for Italy, he resided at a hotel, the Stouffer's Oak Brook Inn located in Du Page County. On August 27, 1976, he was removed from the Inn in a coma and taken to the Hinsdale Sanitarium and Hospital in Du Page County where he died.

At the hospital, a Mrs. Stickler, in going through the patient's effects, discovered a card with attorney John Panici's name on it. She contacted Panici and advised him that Alfredo was in a coma and asked for the name of the Roselli's family physician which Panici gave her. Panici had represented Alfredo on several matters, including estate matters when Alfredo's wife died, and in the sale of his (Alfredo's) house. Furthermore, when Alfredo indicated to Continental Illinois National Bank and Trust Company that he wanted a living trust and a will drawn up, he informed the bank that Panici was his attorney. Also, on August 27, 1976, Vincent

Roselli, a nephew who was very close to Alfredo, contacted Panici. Because no one knew how long Alfredo would be in a coma, and medical bills were mounting, they discussed the need for a conservatorship so Alfredo's funds could be reached to pay the bills. Alfredo had an estate worth $300,000 but, of course, it could not be touched unless a conservator was appointed. Apparently Alfredo died before a petition to appoint a conservator was actually made.

As we noted, Alfredo had a will drawn up. Under that will, the principal beneficiary was charity. The will also made certain bequests to his relatives: Vincent Roselli was the principal beneficiary—he and his wife would have received $20,000; Ida Valenti, his sister, would have received $5,000. There was no bequest to Luigi Roselli, the nephew who was later appointed administrator, although Luigi's wife was left $2,000, the amount to go to her sons if she did not survive Alfredo. The will was never signed.

As stated earlier, Panici was Alfredo's attorney before and at the time of his death. On September 27, 1976, Panici, acting for Vincent Roselli, filed a petition in the circuit court of Cook County asking that letters of administration be issued to Vincent. On September 30, 1976, the circuit court of Du Page County, upon a motion filed by Luigi Roselli, a nephew who had not been on good terms with his uncle when he died, appointed Luigi administrator to collect of Alfredo's estate. Thereupon, the circuit court of Cook County on October 15, 1976, entered an order restraining Luigi from proceeding on any estate matters. On March 31, 1977, the Du Page action was transferred to Cook County; the Cook County court having previously, on March 15, determined that the proper venue was Cook County. Despite the transfer on March 31, no petition to have Luigi appointed as administrator was filed in the Cook County action until June 21, 1977, although the petition was notarized as early as April 26, 1977.

On June 21, 1977, a hearing was held. No court reporter was present but a narrative report of the proceedings, certified as required under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(c)), is in the record. Panici informed the judge that he intended to produce evidence showing that Vincent was closer to the decedent, and knew more about decedent's affairs; that Luigi had to take legal action to collect monies due him from the deceased and that the will which the deceased had drawn up named Vincent as legatee but not Luigi. Luigi objected to all of this as not going to the issue of the qualifications necessary for a person to be appointed administrator. He further pointed out that both he and Vincent were qualified under the statute but that he had the appearances and consents of eight of the 11 heirs, including himself, and that this should be controlling. (Luigi had the consent of one other nephew who lived in the United States, and the consent of the nephews

and nieces who lived outside the United States and those of the grand nephew and grand nieces; Vincent had the consent of his sister, Ida Valenti, who, like himself, lived in Illinois.) The judge inquired if this was all the evidence either side intended to offer and received affirmative replies. He then asked if they could act as co-administrators; Vincent refused. The judge then indicated that he would appoint the person preferred by eight of the 11 heirs, although he recognized that the consents were not binding on him. He also stated that evidence as to who was "closer" to the deceased was inadmissible. At this point, Panici moved for a change of venue and a hearing. The judge denied the motion for change of venue as untimely and set the hearing for June 27, 1977.

At the June 27 hearing, Ida Valeni, with the permission of the court, moved to have herself and her brother, Vincent, appointed as co-administrators. They then renewed their motion for a change of venue. It was again denied. The judge also repeated his statement that Luigi was appointed because he had the consent of the majority of the heirs. He further stated he was only willing to hear evidence as to why he could not appoint Luigi; in other words, evidence showing that Luigi was not qualified under the statute. Since the appellant failed to produce any evidence to this effect the appointment of Luigi was allowed to stand and a bond was set in the amount of $75,000.

The last day Panici represented Vincent was June 27, 1977. On November 17, 1977, he filed a claim in the estate for attorney's fees in the amount of $3,025, both for services rendered before the decedent's illness ($400, there was no objection to this claim) and for services rendered from August 27, 1976, to July 28, 1977 ($2,625). At the hearing, the administrator agreed that he did not dispute the amount of time, hours, etc., but only contended that Panici was not entitled to recover any amount from the estate because he had acted merely as a volunteer, Vincent never having been appointed administrator. The judge rejected this argument and awarded the amount claimed.

Vincent and Ida appealed from the court's actions denying the motion for change of venue and appointing Luigi administrator. The estate has appealed from the allowance of Panici's claim for fees for services rendered on and after August 27, 1976.

## I.

■■■ The first issue before this court is whether the trial judge erred in denying the motion for change of venue. The law in Illinois is well settled that a litigant has an absolute right to a change of venue when his petition asserting prejudice on the part of the trial judge is duly made, verified and filed in accordance with the statutory requirements set forth in the venue act. (Ill. Rev. Stat. 1977, ch. 110, pars. 501-17; *Stark v. Ralph F. Roussey & Associates* (1972), 5 Ill. App. 3d 665, 284 N.E.2d 24, *appeal denied* (1972),

52 Ill. 2d 597; *Frede v. McDaniels* (1976), 37 Ill. App. 3d 1053, 347 N.E.2d 259, *appeal denied* (1976), 63 Ill. 2d 556.) Since there is no dispute as to the form of the petition, the only question is whether the motion is timely filed. A motion must be filed at the earliest practicable moment; except as provided in section 3 of the venue act[1] (Ill. Rev. Stat. 1977, ch. 110, par. 503), it comes too late if filed after the trial judge has ruled on a substantive issue in the case or after the hearing has begun. (*Roherty v. Green* (1965), 57 Ill. App. 2d 362, 206 N.E.2d 756; *Sansonetti v. Archer Laundry, Inc.* (1976), 44 Ill. App. 3d 789, 358 N.E.2d 1142, *appeal denied* (1977), 65 Ill. 2d 584; *Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 285 N.E.2d 156.) This requirement that it be filed at the earliest practical moment is designed to preclude counsel from first ascertaining the attitude of the trial judge on a hearing relating to some of the issues of the case and then, if the court's judgment should not be in harmony with counsel's theory, asserting the prejudice of the court as grounds for allowing a change of venue. (*Roherty v. Green* (1965), 57 Ill. App. 2d 362, 206 N.E.2d 756; *H. Watson Development Co. v. Bank & Trust Co.* (1978), 58 Ill. App. 3d 423, 374 N.E.2d 767.) In the instant case, the appellants did not move for change of venue until after the court had ruled that it would not consider evidence as to who was "closer" to decedent, but would select Luigi because he had the majority vote. As the court stated in *Watson* (58 Ill. App. 3d 423, 431, 374 N.E.2d 767, 773): "In the case at bar, the petition did not come until after the plaintiffs' counsel had participated in a lengthy discussion of the matters at issue, during which the judge indicated his position on at least one of the issues. The subsequent request for a change of venue, therefore, came too late."

The appellants contend that the proceeding on June 21 was only a pretrial hearing, and that, for that reason, the motion was timely, citing *Roherty v. Green* (1965), 57 Ill. App. 2d 362, 206 N.E.2d 756; *Frede v. McDaniels* (1976), 37 Ill. App. 3d 1053, 347 N.E.2d 259, *appeal denied* (1976), 63 Ill. 2d 556.

First of all, we are not convinced that the June 21 hearing was only a pretrial hearing. It is true that there was no court reporter present and that the court asked if the two could act together as co-administrators. But the absence of a court reporter and an inquiry as to settlement do not turn a hearing into a pretrial hearing.

But even if the hearing on June 21 was only a pretrial hearing, this does not automatically mean that the motion was timely. As the court pointed out in *Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 111, 285 N.E.2d 156, 158:

"We are not prepared to hold that a pre-trial conference could never render untimely a Motion for Change of Venue, for we recognize the potential for abuse in a rule which would allow

---

[1] The appellants do not contend that this provision is applicable.

litigants to test the disposition of a trial judge during pre-trial while retaining an absolute right to a change of venue."

In *Frede*, the judge made no ruling on any substantive issues at the pretrial conference; the only definitive action was the setting of dates for answering interrogatories and trial, preliminary matters not having, as the appellate court pointed out, any direct bearing on the substantive issue. In *Roherty*, the judge at a pretrial conference remarked that there was a serious question of the defendant's perjury with respect to certain affidavits and that he would rule for the plaintiff unless convincing evidence was produced. The appellate court, pointing out that a judge in the pretrial conference cannot commit himself but must await the hearing of evidence and the arguments of counsel, held the motion for change of venue was improperly denied.

In *Roherty*, the trial court indicated a position on a question of fact, something it was not entitled to do until the evidence had been heard. On the other hand, in the instant case, the court made a ruling as to a question of *law*: what factors would or not not be weighed in determining who should be appointed administrator. This he was entitled to do. Furthermore, it must be noted that the fact that the judge's mind is closed on a point of law is not considered personal prejudice for purpose of a motion for change of venue. *Board of Trustees v. Cook County College Teachers Union Local 1600* (1976), 42 Ill. App. 3d 1056, 356 N.E.2d 1089.

## II.

■■ The appellants further complain of the trial court's refusal to hear evidence as to which of the petitioners was closest to the deceased and would be better equipped and better able to administer the estate. Where, as here, several persons who are equally entitled to administer are seeking to be appointed, the trial court is vested with a large discretion in appointing one or more of the petitioners. (*Dennis v. Dennis* (1944), 323 Ill. App. 328, 55 N.E.2d 527; Ill. Rev. Stat. 1977, ch. 110½, art. IX, par. 9—3.) We do not believe that the trial court erred in taking into account the wishes of the majority of the heirs, even though some of them were not legally entitled under section 9—3 of the Probate Act of 1975 to nominate an administrator. Compare *In re Samuels' Estate* (Surr. 1953), 204 Misc. 842, 125 N.Y.S. 2d 724; *In re De Hart's Estate* (Surr. 1957), 8 Misc. 2d 531, 166 N.Y.S.2d 466.

## III.

The last issue is whether the trial court erred in awarding Panici attorney's fees. Section 27—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, art. XXVII, par. 27—2) provides that "the attorney for a

representative is entitled to reasonable compensation for his services." The word "representative" is quite broad, meaning simply one who represents. Certainly Vincent as a close relative, both in blood and affection, represented first the dying man and then the estate when he called upon Panici to arrange for a conservator to be appointed and subsequently for the opening of the estate.

■■ The estate, however, contends that the legislature intended to limit the award of attorney's fees to the attorney of one legally appointed to act as an executor or administrator, pointing to the definition section of the Act which (Ill. Rev. Stat. 1977, ch. 110½, art. I, par. 1—2.11), states: " 'Representative' includes executor, administrator, administrator to collect, guardian, conservator, and conservator to collect." The estate argues that these terms all refer to one who has been legally appointed to act and that, under the doctrine of *noscitur a sociis* the term representative must be limited to persons so legally appointed. But it is not clear that such a limitation was intended. For example, it is well established that an attorney for a person seeking conservatorship is entitled to attorney's fees whether the petition is successful or not. (41 Am. Jur. 2d *Incompetent Persons* §102 (1968).) Presumably the legislature was aware of this when it enacted section 1—2.11. Furthermore, it also must have been aware that it has been held that the term "legal representative" may refer to heirs, next of kin or descendants. (*Warnecke v. Lembca* (1873), 71 Ill. 91.) In light of this, the legislature's failure to expressly limit the application of the term "representative" to those persons legally appointed to act for an estate, persuades us that no such limitation was intended.

■■ Furthermore, if we were to rule that attorney's fees may only be awarded to attorneys of those legally appointed to act as administrators or executors, we would be going counter to the well-established doctrine in Illinois that where a testator has established his intention in his will so ambiguously that it becomes necessary for the executor, trustee or a beneficiary to institute a suit in chancery for construction of the will, reasonable attorneys' fees for the complaint and all necessary parties to the true construction of the will will be allowed regardless of who prevails in the case because by bringing the suit he has benefitted the estate. *Continental Illinois National Bank & Trust Co. v. Llewellyn* (1967), 86 Ill. App. 2d 1, 229 N.E.2d 334; *Ingalsbe v. Gough* (1971), 2 Ill. App. 3d 681, 277 N.E.2d 149.

■■ The estate contends that one should not allow each of many heirs to hire his own attorney, file a petition to be appointed administrator and then claim attorney's fees. We agree. But that is not the situation here. Panici was no stranger, either to the decedent or to the estate. He had been the decedent's attorney for some time, representing him on many

matters. Indeed, on August 27, 1976, when he was called first by the nurse and later by Vincent, he was still engaged in handling certain tax matters relating to Alfredo's wife's estate. On August 27 he was contacted by a nephew who was close to his uncle and whom his uncle had intended to make a principal beneficiary in his will. He was asked as Alfredo's attorney, by the nephew to start conservatorship proceedings so that medical bills could be paid. Naturally Panici agreed. And since he was already representing the estate both in the prior estate matter and in the aborted conservatorship proceedings, it was equally natural that he would continue to represent the estate by filing for letters of administration for Vincent, the nephew, who, as disclosed by the October 15 motion, had made and paid for the funeral arrangements. Because of all these circumstances, we hold that the trial court did not err in awarding Panici attorney's fees.

■■ Normally attorney's fees are only awarded to an attorney not hired by an executor or administrator if legal services were in the interest of the estate. (*In re Estate of Freund* (1978), 63 Ill. App. 3d 1, 379 N.E.2d 935.) Panici did not establish that all of the services for which he was claiming fees benefitted the estate, although it is obvious that many did, *e.g.*, the arrangements to petition for conservator, the enjoining of the proceedings in the improper county; the safety box examination. However, the estate denied liability on the sole ground that any services rendered before letters were granted were performed as a volunteer and agreed that it was not questioning that Panici was entitled to recover the full amount claimed if he was entitled to recover anything. Having, in effect, stipulated the amount Panici was entitled to receive, if any at all, the estate cannot now seek to have the award reversed on the grounds Panici did not establish that he was entitled to recover the full amount claimed.

For the foregoing reasons, the judgments of the trial court in the consolidated actions are affirmed.

Affirmed.

JIGANTI, P. J., and JOHNSON, J., concur.