693 N.E.2d 489 (1998)
295 Ill. App.3d 687
230 Ill.Dec. 360
In the Matter of the ESTATE OF Margaret Ann SHULL, a Disabled Person (Kevin Cole, Temporary Guardian, Petitioner-Appellant,
v.
Donald Shull, Guardian over the Person of Margaret Ann Shull, and Magna Trust Company Bank, Guardian of the Estate of Margaret Ann Shull, Respondents-Appellees, and Kehart, Shafter & Webber, P.C., Intervenors-Appellants.)
No. 5-97-0362.
Appellate Court of Illinois, Fourth District.
April 3, 1998.
*490 Heidi R. Balsley, Kehart, Shafter & Webber, P.C., Decatur, for Kevin Cole, Kehart, Shafter & Webber, P.C.
William J. Priest, Samuels, Miller, Schroeder, Jackson & Sly, Decatur, for Donald Shull.
Justice STEIGMANN delivered the opinion of the court:
In April 1997, the trial court conducted a guardianship hearing and subsequently entered orders (1) adjudicating Margaret Ann Shull a disabled person, (2) appointing a family member guardian of her person, and (3) appointing a bank guardian of her estate, all pursuant to sections 11a-3 and 11a-12 of the Probate Act of 1975 (Act) (755 ILCS 5/11a-3, 11a-12 (West 1996)). In May 1997, the court conducted a hearing on the petition for attorney fees (totalling $3,061.25) and costs (totalling $304) filed by the attorneys for petitioner and temporary guardian, Kevin Cole. The court found that the fees sought were excessive and not in the best interest of the estate and awarded $500 in attorney fees and nothing in costs.
Cole and his attorneys, the firm of Kehart, Shafter & Webber, P.C. (the firm), appeal, arguing that the trial court abused its discretion by ordering Margaret's estate to pay only $500 in attorney fees and nothing in costs. We reverse and remand.

I. BACKGROUND
In February 1997, Cole engaged Heidi Balsley, an attorney with the firm, to represent him in seeking a guardianship over Margaret, his 87-year-old great-aunt. Margaret had injured her leg and had been hospitalized prior to being moved to a nursing home. After Margaret's guardian ad litem found that she was confused and unable to make decisions, Cole became concerned that Margaret's physical needs would not be met unless a plenary guardian was appointed. Cole was also concerned about her financial situation. He had learned that in August 1995, Margaret had executed a power of attorney naming an insurance agent, Mark Younker, as her attorney-in-fact and agent, and that soon thereafter, Younker had executed a $55,000 promissory note representing a loan to himself from Margaret.
Because of Cole's concerns about Margaret's physical and financial well-being, he had Balsley file a petition for temporary guardianship of Margaret's person and estate in February 1997. In March 1997, the trial court appointed Cole temporary guardian of Margaret's person and estate and authorized letters of office to issue.
Although the circuit clerk issued letters of office, they had no legal effect as to the estate because the power of attorney executed in Younker's favor remained in effect. As a result, Cole was unable to fulfill his statutory obligations as temporary guardian of Margaret's estate. Balsley wrote and telephoned Younker, requesting that he resign his agency and power of attorney. When Younker did not respond to Balsley's informal methods to resolve the conflict, Balsley filed a petition in March 1997 on Cole's behalf to revoke the agency between Younker and Margaret. Only after Balsley filed the petition to revoke, obtained formal service on Younker, and set the matter for a judicial hearing did Younker voluntarily resign his position and repay the $55,000. After *491 Younker's resignation, Balsley moved to vacate the petition to revoke.
As temporary guardian, Cole conducted a preliminary investigation into Margaret's assets, and Balsley filed an inventory on Cole's behalf in April 1997. Prior to the expiration of Cole's temporary guardianship, Balsley filed a petition for plenary guardianship of Margaret's person and estate. Balsley also filed a physician's report on the petition, setting forth the medical reasons why Margaret needed a guardianship.
After filing the guardianship petition, Cole discovered that Margaret's grandson, Donald Shull, also wanted to be guardian of her person. Balsley arranged a meeting between Cole, Shull, and Shull's attorney to resolve that dispute and other concerns. Cole and Shull subsequently entered into a stipulation of guardianship, which provided, in relevant part, the following: (1) Shull would serve as guardian of Margaret's person; (2) Magna Trust Company Bank (Magna Bank) would serve as guardian of her estate; (3) Shull agreed not to cancel Margaret's doctors' appointments or interfere with her recommended course of treatment; (4) Shull agreed to inform Cole about Margaret's medical and health care problems; and (5) Shull agreed not to deny Cole access to and visitation with Margaret. Balsley prepared and drafted the stipulation, which the trial court later incorporated into its order.
Because Cole and Shull agreed to a stipulation of guardianship, the trial court during the guardianship hearing only heard evidence necessary to establish (1) Margaret's need for a guardian of her person and estate, and (2) the terms of the stipulation.
After appointing the guardians of Margaret's person and estate, the trial court ordered the estate to pay the guardian ad litem $684 in fees for 7.6 hours of work, as requested by the guardian ad litem. Neither Cole nor Shull objected to the guardian ad litem's request. During that same hearing, the court set a hearing date for Cole's petition for attorney fees and costs.
In April 1997, the trial court conducted a hearing on that petition and had before it the following: (1) the petition requesting $3,061.25 in attorney fees for Balsley and $304 in costs; (2) an affidavit filed by Balsley stating that (a) Cole's attorneys worked 38 hours in representing him, and (b) the requested fees were reasonable; and (3) an affidavit filed by Magna Bank, stating that it had reviewed the petition, the supporting affidavit, and Balsley's billing statement, and it had no objection to the petition. During the hearing, the guardian ad litem stated that he had examined a detailed description of the time spent by the firm and he had no objection to the request for fees and costs considering the unique circumstances of the case. Shull, however, objected to the petition on the grounds that the legal services were not in the best interest of the estate and did not directly benefit the estate.
The trial court directed the guardian ad litem to research the applicable law and provide the court with a recommendation. The court also requested a copy of Balsley's billing records setting forth the legal services rendered and their corresponding costs. The guardian ad litem subsequently filed a response to the petition for attorney fees and costs, which recommended that the court award the fees and costs as requested.
In a May 1997 docket entry, the trial court ruled on the petition for attorney fees and costs, as follows:
"This cause having been heard on the [p]etition for [a]ttorney [f]ees and the objection thereto by the [g]uardian of the [p]erson, [the court] finds the fees sought to be excessive and not in the best interests of the ward's estate. Attorney's fees in behalf of Kevin Cole incurred by Kehart, Shafter, and Webber, P.C., are fixed in the sum of $500."

II. ATTORNEY FEES
Cole and the firm argue that the trial court abused its discretion by ordering Margaret's estate to pay the firm only $500 in attorney fees and nothing in costs. Specifically, they contend that the award of $500 is arbitrary and unreasonable considering the unique circumstances of this case. We agree.
Under the Act, the attorney for a representative is entitled to reasonable compensation *492 for her legal services when they are rendered in the interest of or to benefit the estate (755 ILCS 5/27-2 (West 1996)). The determination of what is reasonable must be based upon the facts and circumstances of the particular case. The factors to be considered include (1) the work involved; (2) the size of the estate; (3) the skill shown by the work; (4) the time expended; (5) the success of the efforts involved; and (6) the good faith and efficiency with which the work was completed. The trial court has broad discretion to determine the "reasonable compensation" to be allowed an attorney pursuant to section 27-2 of the Act, and a reviewing court will overturn the award only where the court's determination is manifestly erroneous. In re Estate of Thorp, 282 Ill.App.3d 612, 619, 218 Ill.Dec. 416, 421, 669 N.E.2d 359, 364 (1996).

A. Requirements of Section 27-2 of the Act

1. Cole's Status as a Representative

It is undisputed that Cole is a "representative" whose attorney may be entitled to attorney fees under section 27-2 of the Act (755 ILCS 5/27-2 (West 1996)). Shull acknowledges that section 1-2.15 of the Act provides that the term "representative" includes a "temporary guardian" (755 ILCS 5/1-2.15 (West 1996)).

2. Benefit to the Estate

Shull also concedes that Balsley's actions in this case provided a benefit to Margaret's estate under section 27-2 of the Act (755 ILCS 5/27-2 (West 1996)). As a result of Cole's petitioning for temporary and plenary guardianship in this case, Margaret's personal welfare and her estate were ultimately protected and benefited by the appointment of Shull as the guardian of her person and Magna Bank as the guardian of her estate. In addition, the fact that Cole and Shull negotiated and agreed to a stipulation of guardianship minimized both the time and expense involved in the guardianship proceeding. In particular, we note that Shull did not have to file the statutorily required documents for a guardianship petition because the parties agreed that he should be appointed plenary guardian. Moreover, Cole's petition to revoke Younker's agency prevented any potential abuses of fiduciary duties and served to control Margaret's financial situation. See In re Estate of Roselli, 70 Ill.App.3d 116, 123, 26 Ill.Dec. 463, 468, 388 N.E.2d 87, 92 (1979) (fees were justified for an unsuccessful representative "because by bringing the suit [to be named administrator of the estate] he has benefitted the estate"); see also In re Estate of Byrd, 227 Ill.App.3d 632, 639-40, 169 Ill.Dec. 772, 777, 592 N.E.2d 259, 264 (1992) (estate benefited by unsuccessful parties' opposition to petition for guardianship).
Nonetheless, Shull claims that the factors we earlier set forth support the trial court's award in this case. We disagree.

B. Factors in Determining Reasonable Attorney Fees

1. The Work Involved

The record here indicates that this case presented some unusual circumstances that made the case more complex and required Balsley to perform legal services beyond those routinely required in a guardianship proceeding. For instance, because the power of attorney executed in Younker's favor remained in effect after the trial court appointed Cole as temporary guardian, Cole was unable to fulfill his statutory obligations as a temporary guardian. Thus, Balsley researched the issue and wrote and telephoned Younker, requesting that he resign his agency and power of attorney. When Younker did not respond to Balsley's informal methods to resolve the conflict, she filed a petition on Cole's behalf to revoke the agency between Younker and Margaret. Only after Balsley filed the petition to revoke, obtained formal service on Younker, and set the matter for a judicial hearing did Younker voluntarily resign his position and repay the $55,000 loan.
After Younker's resignation, Balsley moved to vacate the petition to revoke. Although a hearing on that petition never occurred, Balsley nonetheless completed work in anticipation of a contested hearing.
*493 In addition, after discovering that Shull also wanted to be guardian of Margaret's person, Balsley arranged a meeting between Cole, Shull, and Shull's attorney to resolve that dispute and other disagreements regarding Margaret's care. Cole and Shull subsequently entered into a stipulation for guardianship. Balsley prepared and drafted the stipulation, which the trial court later incorporated into its order.

2. Size of the Estate

The record shows that Margaret's estate consisted of over a quarter million dollars in bank accounts, in addition to a house, life insurance, and personal property. We also note that, contrary to Shull's contention, Balsley's work was not strictly limited to Margaret's guardianship. As we earlier discussed, Balsley was required to remove Younker (who had in his possession $55,000 belonging to Margaret) from his position as Margaret's agent.

3. Skill Shown by the Work and the Time Expended

Initially, we note that Shull points out that Balsley's billing record shows that 44 telephone calls were billed at .25 hours each and contends that "[i]n the trial court's substantial experience, it reasonably took notice of the fact that [the firm's] policy is, apparently, to bill `.25 hours' for any work done, no matter how brief it is." We have reviewed the record before us, and we have found no reference by the court to the phone calls, let alone any indication that it "reasonably took notice" of those calls in awarding $500 in attorney fees.
Shull also contends that the trial court could have concluded that the estate should not be charged for 3.75 hours of time spent researching legal issues simply because Cole was represented by an inexperienced attorney. In this regard, we agree with what the United States Court of Appeals for the Seventh Circuit wrote in In re Continental Illinois Securities Litigation, 962 F.2d 566, 570 (7th Cir.1992):
"No matter how experienced a lawyer is, he has to conduct (or have conducted for him) research to deal with changes in the law, to address new issues, and to refresh his recollection."
In our judgment, a trial court should not disallow fees for legal research on the sole basis that the attorney has been practicing for a short time. Although this guardianship proceeding did not present the complexities of a federal securities case (as was the situation in Continental Illinois Securities), it nonetheless was more complex than usual because of certain events that took place. In such a case, it is reasonable for even an experienced attorney to conduct some amount of legal research.

4. Success of the Efforts Involved

Cole's petition for plenary guardianship was not technically "successful" in that he was not appointed guardian of Margaret's person. However, as we earlier discussed, his petitions for temporary guardianship and plenary guardianship were successful in that they ultimately benefited Margaret's personal welfare and her estate with the appointment of Shull as the guardian of her person and Magna Bank as the guardian of her estate.

5. Good Faith and Efficiency

Shull acknowledges that Balsley acted in good faith during her representation of Cole. In addition, the record shows that over a period of approximately two months, the petitions for temporary and plenary guardianship resulted in the appointment of guardians of both Margaret's estate and person. Further, the stipulation of guardianship agreed upon by Cole and Shull eliminated the need for the trial court to conduct a contested hearing on competing guardianship petitions, thereby saving time and expense.
We are aware of the deference we must accord the trial court in its determination of the reasonable compensation to be allowed an attorney. However, we can comprehend no reason for an award of $500 considering the particular circumstances of this case. We note that the $500 awarded minus $304 for coststhe legitimacy of which no one (including the court) disputedleaves a total of $196 in attorney fees for all the time and work Balsley spent in this case. On this record, that sum is egregiously deficient.
*494 If some undisclosed deficiencies or problems existed with the firm's request for attorney fees and costs in this case, it would be easier for this court to understand that situation if the trial court had stated its reasoning for concluding that the requested fees were excessive. In the absence of any such explanation, and reviewing the record before us in accordance with the appropriate standard of review, we hold that the trial court abused its discretion by ordering Margaret's estate to pay the firm only $500 in attorney fees and nothing in costs. Thus, we reverse and remand for further proceedings in accordance with the views expressed herein.

III. CONCLUSION
For the reasons stated, we reverse and remand for further proceedings consistent with the views expressed herein.
Reversed and remanded.
GARMAN, P.J., and KNECHT, J., concur.