*In re* ESTATE OF HAROLD L. BENNETT (Betty S. Bennett, Petitioner-Appellant, *v.* Harold L. Bennett, Respondent (Nola Bennett *et al.*, Cross-Petitioners-Appellees)).

Second District   No. 83—190

Opinion filed March 19, 1984.

Walter P. Maksym, Jr., Aldo E. Botti, and Peter A. Monahan, all of Botti, Marinaccio & Maksym, Ltd., of Oak Brook, for appellant.

Geister, Schnell, Richards & Brown, and Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., both of Elgin, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal arises from certain orders entered in the circuit court of Kane County following a guardianship hearing held pursuant to the Probate Act of 1975. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—1 *et seq.*) The February 1, 1983, orders provided that the respondent, Harold L. Bennett, was a disabled person in need of a limited guardian for his person and estate. Nola Bennett, Harold's mother, and Marie Marler, Harold's sister, were appointed as limited co-guardians. Harold's wife, Betty S. Bennett, the initial petitioner in the proceedings, filed an appeal from the orders.

On April 16, 1981, Betty S. Bennett (petitioner) filed a petition for appointment of guardian for disabled person. She alleged that her husband, Harold L. Bennett (Harold or respondent), was a disabled person

in need of a plenary guardian. The petitioner asked that she be appointed plenary guardian for Harold's person and his estate.

On April 27, 1981, the court appointed Donald Hughes as guardian *ad litem* for the respondent. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—10.) The guardian *ad litem* served a notice of petition and rights on the respondent. He also filed an answer and report to the petition for guardianship on July 29, 1981. A hearing was held at which the guardian *ad litem* presented his report.

The guardian *ad litem* stated in the report that he met with the respondent. He also spoke with the petitioner, Harold's sister, brother and mother. The guardian *ad litem* was satisfied that the respondent was unable to manage his financial affairs and to care for himself and was in need of a plenary guardian.

Attorney Van Richards was appointed to represent the respondent during the proceedings.

On the court's own motion, two physicians were appointed to conduct independent examinations of the respondent. The doctors, F. P. Johnson, M.D., and Werner Tuteur, M.D., filed reports.

Nola Bennett and Marie Marler (cross-petitioners) filed an answer to petition and a cross-petition on December 16, 1981. Subsequently an amended answer and cross-petition were filed. The cross-petitioners requested that either one or both of them be appointed as limited guardians for Harold's person and estate.

The guardianship hearing began on July 1, 1982, and it extended over several months on various dates. It was a bench hearing. The court had granted the respondent's motion to be excused from the hearing during the time he was not testifying.

The incident which led to the guardianship proceeding was a stroke suffered by Harold on June 13, 1979. Harold underwent brain surgery about a month after the stroke. After the initial surgery, he was placed in the hospital again in order to have a shunt placed in his head. Harold was finally discharged from the hospital on November 16, 1979. At the time the hearing began he was 51 years old and was living with his mother.

From Harold's own testimony it was evident that he had a speech impediment. However, he was well aware of his current situation. Harold could identify people, knew dates, understood his health problems, and could recall things in the past, although with some difficulty. He indicated an understanding of the questions posed to him. He showed an understanding of his financial affairs such as his income sources. He also had a fairly accurate understanding of the value of his estate. Although Harold seemed confused at times, some of the confu-

sion was caused by a failure of those in the courtroom to understand him. He was also testifying for a long time.

Much of the testimony from the petitioner was irrelevant to Harold's current condition. The petitioner had not had any close contact with Harold in over a year. Although the petitioner described the respondent's physical and mental capacities during the time she cared for him as being quite limited, she said that Harold participated in the decision-making in certain financial matters involving personal property sales.

Testimony was heard from the cross-petitioners, Harold's brother-in-law, and two people who resided in the house where Harold lived. There was also testimony from four expert witnesses.

The testimony showed that Harold could walk with the aid of a walker although he also used a wheelchair. At home he could walk with the help of railings installed in the house by his sister and brother-in-law. Harold could feed, shave, and bathe himself. He also went shopping every week with his mother. He received physical therapy.

The respondent took medication such as Valium to keep him calm. He was under a doctor's care. Although Harold did not have a driver's license, he drove a pickup truck in a nearby field. He was accompanied by someone when he drove, usually his brother.

Doctor Marvin Ziporyn, a psychiatrist, was called by the petitioner. The doctor performed a standard psychiatric examination of Harold. The doctor concluded that Harold had cortical damage and suffered from organic brain syndrome. The respondent suffered from a subdivision of organic brain syndrome, amnestic syndrome, which resulted in memory difficulties.

Because of Harold's mental deterioration, the doctor said he was not fully capable of managing his estate or person. The respondent's insight was poor, and his judgment, physical functioning, and ability to learn new tasks were impaired. Harold's opinion as to who his guardian should be would be of no value to the court. The doctor recognized that Harold could handle fully perhaps 90% of what goes on. Overall, the doctor believed that Harold required a plenary guardian for his person and estate.

Harold was examined by two other psychiatrists, Dr. Werner Tuteur and Dr. Frank P. Johnson. A clinical psychologist, Dr. Martin W. Scripp, also conducted an examination. They were called to testify by the cross-petitioners. Their testimony indicated that Harold had residual findings of a stroke such as slurred speech, visual impairment and spastic gait. Certain tests were performed. Harold was found to be alert and coherent.

Generally, their testimony indicated that Harold was capable of managing his person and estate with assistance from someone. He had a problem communicating because of his speech but he was goal-directed and coherent. Due to a deficiency in conceptual abilities, Harold's reasoning process could experience gaps. However, with support and assistance from a limited guardian, Harold could manage his estate and financial affairs. It was recommended that Harold's opinion be considered in the selection of a guardian. The three doctors believed a limited guardianship for Harold's person and estate was needed.

Following the hearing the court ordered that the respondent was in need of a limited guardian for his estate and person. The respondent's mother and sister were appointed as his limited co-guardians. The petitioner filed a notice of appeal from the orders.

The petitioner has presented three issues for review: (1) whether the trial court failed to exercise its discretion in selecting a guardian for the respondent; (2) whether the finding that a limited guardian was needed was against the manifest weight of the evidence and whether the appointment of the cross-petitioners as guardians was an abuse of discretion; and (3) whether the order establishing the limited guardianship was vague.

In her first issue the petitioner claims that the trial court failed to exercise its discretion in selecting a guardian but instead merely acted upon the respondent's preference. The parties stipulated during the hearing that Harold was a disabled person. The court indicated it would bifurcate the proceedings to determine whether a limited or plenary guardian was needed and then it would determine who it should be. The petitioner claims that the court failed to complete the last step and did not hear evidence on the selection of a guardian. She also cites to various statements made by the trial court to indicate that the court felt bound by the respondent's choice.

Section 11a—12(d) provides that the selection of a guardian is within the court's discretion having given due consideration to the preference of the disabled person. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—12(d).) The discretionary authority to select a guardian serves the best interest of the disabled person. While the court was required to consider the respondent's preference, it was not bound by the preference. *In re Estate of Mackey* (1980), 85 Ill. App. 3d 235.

The statements relied upon by the petitioner have been reviewed as well as other statements made by the court which indicate an awareness of its discretionary authority. It is apparent that the court gave due consideration to the respondent's preference, but the court used its discretionary authority in selecting a guardian. It did not act

as though bound by the respondent's choice.

There was sufficient evidence before the court to allow it to exercise its discretionary authority although there was an effort to bifurcate the proceeding. The petitioner and the cross-petitioners testified. The petitioner was allowed to cross-examine. The record contains evidence regarding the care the petitioner and the cross-petitioners gave the respondent. Considering the evidence before the court, the court exercised its discretion in selecting a guardian having given due consideration to the respondent's preference.

■ Next, the petitioner argues that the manifest weight of the evidence supports a finding that a plenary guardianship was needed rather than a limited one. She states that the court erroneously disregarded Dr. Ziporyn's testimony and that it should have been given greater weight. The court's order indicates that Dr. Ziporyn's testimony was considered. It based its determination upon the testimony of expert and lay witnesses. The conflicting testimony of the experts was determinable by the court as the trier of fact which was in a better position to assess credibility. *Falkenbury v. Elder Cadillac, Inc.* (1982), 109 Ill. App. 3d 11.

The petitioner also relies upon her testimony to support a claim for a plenary guardian. However, the petitioner's testimony which was not favorable to the respondent, concerned the time the respondent lived with her. The petitioner had very little contact with the respondent since June 1981.

Based on the evidence presented at the hearing, the court's finding that a limited guardianship was necessary was not against the manifest weight of the evidence. (*In re Estate of Galvin* (1983), 112 Ill. App. 3d 677.) A reviewing court may not substitute its judgment for the trial court's unless the judgment was against the manifest weight of the evidence. (*In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020.) *Cf. In re Estate of Galvin* (1983), 112 Ill. App. 3d 677, wherein the respondent was found not to be disabled although he suffered from some physical disability and mental "peculiarities."

■ The petitioner argues that the selection of Marie Marler and Nola Bennett as co-guardians was an abuse of discretion. She claims that based upon the small amount of testimony on the issue, the petitioner should have been appointed or a neutral guardian. The petitioner argues for a neutral guardian based on her joint interest in the property.

The evidence showed that the respondent was content with his mother and had improved since living with her. The mother and sister provided constant care and attention. The experts generally agreed

that the current living arrangement was satisfactory. The trial court did not abuse its discretion in appointing the cross-petitioners as limited co-guardians.

Part of the petitioner's argument in support of all her issues on appeal is her concern for her interest in the property she owns jointly with the respondent. However, the primary concern in the selection of a guardian is the best interest and well being of the disabled person. See *In re Estate of Vicic* (1979), 79 Ill. App. 3d 383; *In re Conservatorship of Browne* (1977), 54 Ill. App. 3d 556.

■ In her last issue, the petitioner argues that the order which found the respondent to be a disabled person in need of a limited guardianship was contradictory, vague and contrary to the provisions of the Probate Act of 1975 pertaining to guardianships. Because of its generality, the petitioner states that a plenary guardianship was established by the order. She is concerned with her joint interest in the respondent's property.

The order determining that the respondent needs a limited guardianship is not contradictory and vague. It recognizes that the respondent can be disabled and lack some but not all of the capacity as specified in section 11a—3. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—12(c).) The respondent requires limited assistance due to his speech impediment and the physical difficulty he encounters with writing and walking. He also has some lapses of memory, but when he is provided with the necessary information, he is capable of reaching a responsible decision. The order conformed with the evidence adduced at the hearing. Although the respondent is a disabled person, he is not incapable of knowing what he wants to do. He merely needs assistance. The order is in keeping with the intent of the statute. Ill. Rev. Stat. 1981, ch. 110½, par. 11a—3(b).

■ Nor does the order establish a plenary guardianship. Guardianship is to be used to encourage self-reliance and independence. (*In re Estate of Mackey* (1980), 85 Ill. App. 3d 235.) It should be utilized only to the extent necessary to promote the respondent's well-being and to protect him from neglect, exploitation or abuse. (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—3(b).) The intention of the court herein was to provide the respondent with as much authority to guide his person and estate as possible in terms of his condition.

Based on the foregoing, the orders of the circuit court of Kane County are affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.