2023 IL App (2d) 230138-U
No. 2-23-0138
Order filed December 26, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF WALTER BROOKER, a Disabled Person | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | | No. 21-P-168 |
| (Karen Brooker, Petitioner-Appellee, v. Yelena Brooker, Respondent-Appellant, Law Office of Bridget G. Wrobel, LLC, Appellee). | ) ) ) ) | Honorable Joseph A. Grady, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Trial court did not abuse its discretion in approving an amended budget for the estate, approving the Guardian's final accounting, or entering judgment for spouse's former attorney on fee petition and requiring spouse to pay half of current attorney's fees.  Spouse forfeited other arguments.

¶ 2   Walter Brooker became disabled following a stroke in February 2021. Two daughters from his first marriage were appointed as guardians of his estate and his person.  In subsequent disagreements between those guardians and Walter's second wife, Yelena, over Walter's care and expenditures from his estate, the trial court entered orders largely siding with the guardians.  The trial court also entered orders requiring Yelena to pay most of the fees for her attorneys.  Yelena appeals from several of these orders.  We affirm.

¶ 3                                 I. BACKGROUND

¶ 4                              A. Walter's Care

¶ 5     Walter suffered a stroke in February 2021 that left him totally disabled and unable to understand language, communicate, or care for himself. On March 24, 2021, the trial court appointed Karen Brooker as the temporary guardian of his estate and Julie Berry as the temporary guardian of his person. On April 1, 2021, he was discharged from the hospital and returned to the home he shared with his wife of almost 20 years, Yelena. Yelena was nearly 80 years' old. Walter's son, Timothy Brooker, initially moved into their home to serve as Walter's primary caregiver. On April 27, 2021, Walter's daughters Karen and Julie were appointed plenary guardians of Walter's estate and his person, respectively.

¶ 6     In May 2021, Timothy was hospitalized and could no longer provide care for Walter. A home health care agency was hired to provide full-time in-home care for Walter, beginning June 8, 2021. There was friction between the caregiver assigned to care for Walter and Yelena, who had criticisms of the care being provided.

¶ 7     Karen filed a petition seeking leave to purchase a prepaid funeral plan and set the hearing for July 27, 2021. No transcript or bystander's report of this proceeding appears in the record. In her appellate brief, Yelena states that her first language is not English and that she requested an interpreter for the hearing. However, when she appeared in court, no interpreter was present. Yelena had no attorney at that point. She opposed the petition on the grounds that Walter's funeral wishes were known, that the plan identified provided services beyond what he had requested, and that there were less expensive options. The trial court granted the petition over Yelena's objection. Karen then made an oral motion to remove Walter from his home and move him to an apartment, asserting that Yelena's criticisms of the caregiver had resulted in the caregiver complaining and

threatening to quit. Again over Yelena's objection, and without providing Yelena with time to file a response, the trial court granted this oral motion. The order further provided that Yelena's visits with Walter could be limited "at the discretion of the guardian of the person."

¶ 8    Yelena hired an attorney, the Law Office of Bridget G. Wrobel. Wrobel filed a timely motion to reconsider the trial court's order of July 27, 2021, arguing that Yelena had not received due process. The motion was heard on September 21, 2021, and the trial court denied the motion. No transcript or bystander's report of this hearing appears in the record.

¶ 9    Walter was moved to an independent living apartment at Ascension Living Fox Knoll Village in July 2021. His caregiver quit three months later in October 2021. Walter remained in the apartment under the care of a succession of other caregivers for another five months. In March 2022, Walter was moved into the home of his daughter, Julie, who was a registered nurse. Walter died on June 9, 2022.

¶ 10                                B. Assets of the Estate

¶ 11    Shortly after his stroke, Walter had a little more than $116,000 in three Old Second Bank accounts: (1) account 6018, a checking account with a balance of over $63,000, which designated Yelena as the beneficiary to whom the account should be paid upon his death; (2) account 4246, with a balance of a little over $8,000 and no designated beneficiary (the parties suggest that this account was intended by Walter to cover his funeral expenses, and it appears to have been used for that purpose); and (3) account 8848, with a balance of over $45,000, for which the designated beneficiaries were Walter's four children (including Karen and Julie). The estate also opened a new account (9013) to serve as the depository for Walter's retirement and other benefits, and to pay estate expenses. To pay for the costs of Walter's care, Karen drew first on account 6018 and then, when that was depleted, on accounts 9013 and 8848.

¶ 12    Walter's monthly expenses included both the rent for the apartment and the cost of full-time care. His estate also initially paid the costs of maintaining the marital home and car, as Yelena had little income (about $600 per month in benefits) and Walter had always paid these costs. Walter's monthly income was about $4,500, requiring the estate to draw on his assets to pay for his care.

¶ 13    On January 4, 2022, Karen filed a petition to establish a monthly budget including $2100 for rent and $12,500 for Walter's home care services. The petition alleged that Yelena had substantial assets of her own and argued that Walter's estate should not be required to contribute to the upkeep of the marital home and car, as he was no longer using either. The petition was presented to the court just three days later, on January 7, 2022. Karen's attorney represented to the court that there was no objection to Karen's petition. The order entered that day set a budget that permitted Walter's estate to stop contributing to the cost of the marital home and car.

¶ 14    Attorney Wrobel filed an emergency motion to amend the January 7, 2022, order, to delete the portion allowing the estate to discontinue payments for the marital home and car. Wrobel argued that there had been a sudden death in her family and she did not have a chance to closely read the petition before being contacted by Karen's attorney, who did not mention that Karen was seeking to discontinue payments to maintain the marital home and car. Further, the portion of the estate's petition that listed the relief sought did not include any request to discontinue these payments. Wrobel asserted that she would have appeared in court and objected to this portion of the budget petition had she known of this request. Karen's attorney did not send her a copy of the proposed order for that date until after it was entered. On January 13, 2022, the trial court denied the motion to amend the order. No transcript or bystander's report of the proceedings on January 7 and January 13 appears in the record.

¶ 15 Wrobel advised the court that, to minimize the cost of Walter's care, she and Yelena frequently asked the guardians to either return Walter to his home or place him in a nursing home for which Medicare coverage could be pursued. These requests were unsuccessful.

¶ 16 After Walter was moved into Julie's home in March 2022, Karen asked the court to enter an amended budget for Walter that included $2000 per month as rent for Walter's stay in Julie's home, and $5,000 per month for caregivers. As before, the amended budget did not include any contribution to Yelena's living expenses. Yelena filed a motion to enforce spousal rights, which among other things sought to require the guardians to place Walter in a long-term care facility and apply for Medicaid to preserve the estate's assets. Yelena argued that the guardians had a statutory duty to provide not only for Walter but also for his dependents, which included Yelena, and that the cessation of the payments to maintain the marital home and car were impoverishing her. The guardians responded by subpoenaing Yelena's bank accounts, which showed that near the time of Walter's stroke she had about $90,000 in a separate account, and that the current balance of that account was about $42,000. The trial court approved the amended budget on April 29, 2022.

¶ 17 As of June 9, 2022, when Karen filed the amended final accounting for the estate, almost the entire checking account (6018) had been emptied, leaving only $477.11 payable to Yelena on Walter's death. Account 9013, the account opened and operated by the guardians, held $9687.21. Account 4246, the funeral expenses account, held $1503.62. Account 8848, which was to be divided among Walter's children upon his death, held $18,212.59. The total of all of these accounts was $29,880.53. (None of these accounts were Yelena's separate account.) Other joint assets of Walter and Yelena included a joint checking account with about $2600 in it; an 18-year-old Toyota Corolla, and the couple's home, valued by the Kane County Assessor at $177,471.

¶ 18                                  C. Attorney Fees

¶ 19    As noted above, Yelena hired the Law Office of Bridget G. Wrobel in August 2021.  In January 2022, Wrobel filed a petition seeking interim fees in the amount of $7908.75.  Wrobel stated that her representation of Yelena had benefited the ward, *i.e.*, Walter, and asked that her fees be paid out of his estate.  On February 1, 2022, the trial court heard the petition.  It found that Wrobel's fees were reasonable and necessary but that Wrobel's representation did not benefit the estate.  Accordingly, the trial court granted the petition but required Wrobel to seek payment from Yelena herself.  Yelena retained different counsel, the Kabbe Law Group.  On March 4, 2022, an attorney at that firm substituted her appearance for that of Wrobel.

¶ 20    Yelena did not immediately pay the fees, and Wrobel asked the court to enter a judgment against Yelena in the amount of $7908.75.  On January 18, 2023, the trial court granted this request. Yelena filed a motion to reconsider, arguing that Wrobel had told her that her fees would be paid out of the estate, and that Wrobel did not file (and Yelena's new attorneys did not have the opportunity to file) a motion to reconsider the February 1, 2022, order finding Wrobel's fees to be reasonable and necessary but not made for the benefit of the estate.  Wrobel contested this, pointing out that Yelena signed an engagement letter stating that she understood that she was responsible for Wrobel's fees if the estate did not pay them.  Further, Yelena's new attorney contacted Karen's attorney during the first half of February 2022, and thus her new attorney could have filed her substituted appearance earlier than March 4, 2022, enabling her to file a timely motion to reconsider.  On February 27, 2023, the trial court denied Yelena's motion to reconsider the January 2023 entry of judgment against her.

¶ 21    Yelena's new attorney then filed her own fee petition, arguing that her work benefited the estate and thus her fees should be paid by the estate.  On March 28, 2023, the trial court granted

the petition in part, finding that the fees were reasonable and necessary, and that one-half of them should be paid by the estate.

¶ 22                                    II. ANALYSIS

¶ 23    Before addressing the merits of this appeal, we pause to note that Karen filed a motion to dismiss it. Karen asserts that Yelena mischaracterized various things in her statement of the facts. Karen also disputes Yelena's opinion about whether Walter's children received a "windfall" in that the account payable to them upon Walter's death had over $18,000 in it, whereas the account payable to Yelena had only $477.11 in it. None of these flaws merit the dismissal of the appeal or sanctions on the ground of frivolousness, in our view. We therefore proceed to the merits.

¶ 24    Yelena's notice of appeal lists seven orders she wishes to challenge: those entered on July 27, 2021, February 1, 2022, April 29, 2022, January 17, 2023, January 18, 2023, February 27, 2023, and March 28, 2023. We first address the orders and arguments that do not relate to attorney fees, and then consider those that do.

¶ 25                 A. Orders and Issues Unrelated to Attorney Fees

¶ 26    Yelena first complains that the trial court's order of July 27, 2021, granting the guardians' requests to move Walter out of the marital home and to purchase a prepaid funeral plan, was an abuse of discretion. To the extent that Yelena is asserting that the trial court should not have reached the conclusion it did, we must reject her argument because the record does not include any transcript or bystander's report of the proceedings on this date.

> "The burden rests on the appellant to provide a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). '[I]n the absence of a proper record a

reviewing court may dismiss an appeal or, in the alternative, summarily affirm the judgment of the trial court.' " *Marx Transport, Inc. v. Air Express International Corp.*, 379 Ill. App. 3d 849, 853 (2008) (quoting *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 92 (1994)).

Because, in the absence of a transcript, we must presume that the trial court's order conformed to established legal principles and was adequately supported by the facts, we find no abuse of discretion in the trial court's actions on July 21, 2021.

¶ 27 Further, to the extent that Yelena argues that the trial court committed legal error because it did not hold an evidentiary hearing before making its decision, Yelena has forfeited the argument by failing to provide any legal authority to support it. Where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. We also note that Yelena has not adequately supported any argument that the trial court erred in denying her motion to reconsider this order, as the record lacks any record of the proceedings on September 21, 2021, when that motion was heard.

¶ 28 Yelena next challenges the order entered on April 29, 2022, granting the guardians' motion to amend the budget for the estate's expenditures following Walter's move into the home of his daughter Julie. As mentioned above, Yelena responded by filing a motion to enforce spousal rights, arguing that the guardians owed a statutory duty to preserve the estate's assets for the benefit not only of Walter but also of his dependents such as Yelena. Instead of initially placing Walter in a long-term care facility where he could receive reliable ongoing care that was largely paid for by Medicaid, the guardians kept him in an apartment and hired in-home caregivers at a monthly cost of almost $16,000. Yelena argued that, although the guardians' current motion included a

much lower allocation for caregivers as Julie anticipated providing much of Walter's care, it was still too high and would result in the impoverishment of both the estate and Yelena before long. Yelena did not attach any evidence regarding her or Walter's finances to her motion.

¶ 29    The guardians replied with a lengthy explanation of why institutional care was inappropriate for Walter.  He had been in institutions briefly several times since his stroke, for hospitalizations and acute and subacute rehabilitation.  When institutionalized, he was agitated and despondent.  His inability to communicate and his bodily needs (such as the need to be fed by hand), coupled with the competing demands placed on institutional staff, resulted in bedsores and missed meals.  He was tall (six feet five inches) and so he did not fit in institutional beds.  Further, although his lack of control over bodily movements meant that he needed a full bedrail, those were prohibited in institutions, with the result that he had twice been found on the floor beside his bed in the morning, having fallen out but unable to summon help.  As for conserving assets of the estate, the move to Julie's home would result in several thousand dollars less each month being needed for caregiving, as Julie would provide much of that without charge.  The guardians had also pursued some public benefits and insurance to pay for Walter's care, but he was ineligible for the programs they had explored.  Yelena's reluctance to provide the guardians with information about her own assets meant that they were unable to apply for Medicaid.  Finally, although they did owe Yelena the duty to ensure that she was supported, her bank statements (which they attached) showed that she had about $42,000 available to her.  After hearing oral arguments, the trial court granted the guardians' motion and denied Yelena's motion.

¶ 30    On appeal, Yelena argues that the trial court abused its discretion by not placing Walter in a long-term care facility in order to preserve his assets and by approving a budget that compensated Julie in the amount of $2000 per month for Walter's room and board while he lived in her home.

Yelena has not carried her burden on either of these arguments.[1] A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11. Here, there was ample evidence supporting the trial court's decision not to place Walter in institutional care. And although Yelena complains that Karen did not support her request to amend the budget with evidence such as bills, receipts, or caregiver agreements, there is no dispute that the quality of Walter's housing in Julie's home was equivalent to his former apartment, for which the estate was paying more. The estate also advised the court that Walter was using the master bedroom while Julie and her husband slept in the basement, Julie's electric and grocery bills were higher because of Walter's presence in her home, and there were laundry costs associated with the daily laundry to keep Walter's bedding and clothing clean and sanitary. Yelena did not present evidence that Walter could have received the same quality of care elsewhere for less. For all of these reasons, we find no abuse of discretion in the trial court's approval of the amended budget on April 29, 2022.

¶ 31 The remaining non-attorney-fee-related order listed in the notice of appeal is the order of January 17, 2023, in which the trial court approved the estate's final accounting after Walter's death. So far as we can discern, Yelena's only assignment of error related to that order is that the

---

[1]As to the trial court's decision to permit Walter's estate to stop paying the costs of the marital home and car, that issue is not before us, as the trial court made that decision on January 7, 2022, and Yelena did not identify that order as one she wished to challenge in this appeal. The April 29, 2022, order approving the guardians' amended budget simply continued the trial court's previous ruling.

trial court did not order the estate to pay her some of the money remaining in account 8848 (the account that was payable on death to Walter's children) in order to equalize the funds left to Walter's survivors. However, Yelena provides no legal authority whatsoever for her assertion that the trial court had an obligation to ensure an equal division of assets upon Walter's death. She has thus forfeited her challenge to the January 17, 2023, order. See *E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("Both argument and citation to relevant authority are required" to avoid forfeiture).

¶ 32     We are not unsympathetic to Yelena's situation. Doubtless, she hoped for a better outcome here. Unfortunately, as a reviewing court, we owe deference to the trial court, and that fact compels the result here. We note that Yelena devotes several pages of her briefs to arguments that the guardians breached their fiduciary duty to her. If Yelena believes that she has a valid claim for breach of fiduciary duty, she is welcome to bring a suit. The record in this case does not show that Yelena ever filed a claim of breach of fiduciary duty against the guardians, however, and thus any such claim was not before the trial court. Nor is it before this court. Our decision here rests solely on the claims presented thus far.

¶ 33                    B. Orders and Issues Related to Attorney Fees

¶ 34     Yelena challenges several of the trial court's rulings regarding attorney fees. She first attacks the February 1, 2022, order finding that Wrobel's fees were reasonable and necessary but that they could not be paid from Walter's estate. As Yelena correctly notes, section 27-2(a) of the Probate Act of 1975 (755 ILCS 5/27-2(a) (West 2020)) permits the payment from the estate of "reasonable compensation" to the "attorney for a representative." Further, the term "representative" is quite broad and extends beyond those who are legally appointed to act for an estate, to include heirs and next of kin. *In re Estate of Roselli*, 70 Ill. App. 3d 116, 123 (1979). A representative need not be successful in order to have her attorney fees paid by the estate, so long

as the representation benefited the estate in some way. *In re Estate of Byrd*, 227 Ill. App. 3d 632, 639 (1992).

¶ 35    Here, however, neither Wrobel (in presenting her fee petition before the trial court) nor Yelena (before the trial court and on appeal) identified any ways in which Wrobel's actions as Yelena's attorney benefited Walter's estate. Wrobel's bare assertion that her services benefited the estate was not sufficient. It is the obligation of one seeking relief from a court to produce evidence and arguments supporting her request. Lacking such evidence or even detailed argument, the trial court did not err in finding that the estate should not bear the cost of the fees.

¶ 36    On appeal, Yelena argues that, when she hired Wrobel, Wrobel assured her that attorney fees were generally payable by the estate, and thus Yelena did not anticipate that she would have to bear that cost herself. However, Wrobel told the trial court that the engagement letter Yelena signed made it clear that Yelena would be responsible for Wrobel's fees if they were not paid by the estate. Yelena has not disputed this assertion, nor has she shown that her agreement with Wrobel was unconscionable or invalid. We have no basis for finding that the trial court's rulings on February 1, 2022, were an abuse of discretion.

¶ 37    Yelena next attacks the orders of January 18, 2023 (reducing Wrobel's attorney fees to an enforceable judgment entered against Yelena) and February 27, 2023 (denying Yelena's motion to reconsider the first order). Yelena argues that these orders were unfair as she did not have an opportunity to contest the reasonableness of Wrobel's fees or raise contract defenses. However, Yelena did have such an opportunity. First, she could have filed a motion to reconsider the trial court's February 1, 2022, finding that Wrobel's fees were reasonable and necessary. Although her new counsel did not file an appearance until more than 30 days after the entry of that order, the guardians' attorney advised the trial court that her office had been contacted by Yelena's new

attorney within two weeks, indicating that a timely motion to reconsider could have been filed. Moreover, Wrobel filed her motion for judgment in September 2022. Yelena had the opportunity at that point to raise any arguments she wished to make about the reasonableness of Wrobel's fees and any defenses that she may have had to her contractual obligation to pay those fees, but she did not file a response or seek an evidentiary hearing. Accordingly, the trial court did not err in entering judgment for Wrobel in the amount of the fees.

¶ 38 The final matter Yelena raises on appeal is the trial court's March 28, 2023, determination that only one-half of the attorney fees arising from Yelena's second attorney's representation could be paid by the estate (and thus she must pay the other half). Yelena states, and we agree, that this amounted to an implicit finding by the trial court that one-half of the efforts made by Yelena's second attorney benefited the estate. But Yelena's sole challenge to this determination is the bare assertion that all of the legal services rendered by her second attorney were in Walter's best interest. That bare statement, devoid of any specifics about *how* those legal services benefited Walter's estate, is insufficient to show that the trial court abused its discretion. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited). Yelena also complains that the trial court did not provide its reasoning for this award. While we agree that it is preferable for a trial court to explain the basis for its decision, Yelena has not cited any legal authority that such an explanation was required here. We thus see no legal basis to overturn the trial court's ruling regarding Yelena's second attorney's fees. *Id.*

¶ 39                                    III. CONCLUSION

¶ 40 For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 41 Affirmed.