2026 IL App (1st) 250459-U

No. 1-25-0459

Order filed January 27, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF LESLIE BURNS, an alleged disabled person, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (JULIA CHEVRON and DDV LAW, LTD., | ) ) | No. 23 P 7996 |
| Petitioners-Appellees, | ) ) | Honorable |
| v. | ) ) | Amee E. Alonso, Judge, presiding. |
| ROBERT BURNS, as power of attorney for Leslie Burns, | ) ) | |
| Respondent-Appellant.) | ) | |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the circuit court's attorney fee awards over respondent's contentions that (1) petitioners were not "representatives" of the estate, (2) petitioners provided no benefit to the estate, and (3) the circuit court's appointment of temporary guardians and a guardian *ad litem* cut off petitioners' ability to recover attorney fees.

¶ 2     Respondent Robert Burns challenges the circuit court's attorney fee awards to two law firms that represented petitioner Julia Chevron in this adult guardianship case. On appeal, Robert

contends that Julia and her attorneys were not representatives of Leslie Burns's estate and did not benefit the estate; therefore, they cannot recover attorney fees as a matter of law. Robert also argues that the circuit court's appointment of temporary guardians and a guardian *ad litem* as of November 20, 2023, cut off Julia's ability to recover attorney fees thereafter. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Leslie Burns is 75 years old and, based on the record, it appears that she suffers from serious neurodegenerative conditions. Julia is Leslie's daughter. Leslie has two brothers, Robert and Bruce Burns. Robert and Bruce are Julia's uncles.

¶ 5     On June 7, 2023, Leslie executed estate planning documents that (1) created a living trust with herself as trustee and Robert as successor trustee, (2) granted Julia power of attorney for Leslie's healthcare, and (3) granted Robert power of attorney for Leslie's property. In late October or early November 2023, Leslie resigned as trustee and Robert became the successor trustee. On November 13, 2023, Leslie revoked Julia's healthcare power of attorney and transferred it to Bruce. This case arose from disputes regarding Leslie's mental capacity to execute these documents and Robert's role in allegedly inducing her to do so. Because this appeal involves only certain attorney fee awards, we set out only the procedural history relevant to that issue.

¶ 6                            A. Guardianship Proceedings

¶ 7     On November 14, 2023, Julia filed a petition alleging that Leslie was cognitively impaired and unable to make decisions regarding her healthcare, estate, and financial affairs. Julia requested the court to appoint her and Trinity Advocacy Group (Trinity) as guardians of Leslie's person and

Midland Trust Company (Midland) as guardian of Leslie's estate. DDV Law, Ltd. (DDV) represented Julia and filed this petition on her behalf.

¶ 8    On November 16, 2023, the circuit court appointed Mary Raleigh as guardian *ad litem* (GAL). On November 20, 2023, the court appointed Trinity as temporary guardian of Leslie's person and Midland as temporary guardian of her estate. The court also suspended the powers of attorney Leslie executed on June 7 and November 13, 2023. Over the next six months, the parties litigated a petition to invalidate those powers of attorney, motions to dismiss Julia's petition for guardianship, and Leslie's evaluations by several doctors, among other issues.

¶ 9    On May 7, 2024, the court granted DDV leave to withdraw from representing Julia and granted Howard & Howard Attorneys PLLC (Howard & Howard) leave to substitute as her new counsel. The parties settled the case shortly thereafter.

¶ 10    Pursuant to that settlement, on June 12, 2024, the court entered agreed orders (1) appointing Arosa Guardians (Arosa) as plenary guardian of Leslie's person, (2) terminating Julia's power of attorney for Leslie's healthcare, and (3) granting Robert power of attorney for Leslie's property, subject to certain limitations and oversight by Julia. The court also granted DDV leave to file a fee petition.

¶ 11    However, a dispute arose regarding who had decision-making authority for Leslie's healthcare: Arosa as plenary guardian or Bruce under the power of attorney that Leslie executed on November 13, 2023. Bruce moved to vacate the settlement agreement, arguing that he had not received notice of the proceedings because the parties sent filings to the wrong email address. Bruce contended that his right to due process was violated because he was not involved in settlement discussions that effectively terminated his power of attorney for Leslie's healthcare. At

a hearing on February 27, 2025, the circuit court vacated the agreed settlement orders and Arosa's appointment as plenary guardian. The court ordered that the "current Powers of Attorney for Healthcare and Property are in full force and effect," which essentially placed Leslie's estate back into the posture it was in before Julia filed the guardianship petition. That is, Robert retained power of attorney for Leslie's property and Bruce retained power of attorney for her healthcare pursuant to the documents Leslie executed in June and November 2023. According to the circuit court's docket, litigation continued thereafter but ended in late October 2025, and no future court dates are set. See *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 50 (taking judicial notice of the circuit court's electronic docket).

¶ 12                                      B. Attorney Fee Proceedings

¶ 13    Between the circuit court's entry of the agreed settlement orders on June 12, 2024, and its vacatur of those orders on February 27, 2025, the parties litigated the fee petitions at issue in this appeal.

¶ 14                                      1. DDV's Fee Petition

¶ 15    DDV's petition sought attorney fees and costs totaling $138,899.25. DDV attached its attorneys' billing records and summaries of their skills and experience.

¶ 16    Robert argued that DDV was not entitled to any attorney fees because the circuit court never appointed DDV or Julia to act on the estate's behalf. Robert also contended that, as of November 20, 2023, the circuit court had appointed a GAL and temporary guardians of Leslie's estate and person, so Leslie's interests were "adequately protected" at that point. Robert argued that, pursuant to *In re Lundahl*, 200 Ill. App. 3d 108 (1990), DDV could not recover fees for work

it performed after November 20, 2023. Robert also contended that DDV should not recover fees for work it performed before November 20, 2023, because that work did not benefit Leslie's estate.

¶ 17 The GAL acknowledged that DDV was entitled to reasonable attorney fees pursuant to section 27-2 of the Probate Act of 1975 (755 ILCS 5/27-2 (West 2024)) but argued that DDV's billing was excessive. For example, DDV sometimes billed for more than 20 hours of work in a single day and for "filing fees" the clerk did not actually charge. The GAL requested that the court reduce DDV's fees and costs accordingly.

¶ 18 Howard & Howard, representing Julia, also contended that DDV's fees were excessive. Additionally, Howard & Howard argued that DDV did not benefit Leslie's estate beyond a small amount of work related to the appointment of the temporary guardians. Howard & Howard requested that the court reduce DDV's fees and costs to $33,119.25.

¶ 19 DDV's reply argued that its work benefitted Leslie's estate because it led to the appointment of guardians, limitations on Robert's powers of attorney, and oversight by Julia. DDV also contended that its billing was not excessive but acknowledged that the court could "make a determination of whether the fees requested [were] reasonable or should be reduced to some extent."

¶ 20                                2. Howard & Howard's Fee Petition

¶ 21 Howard & Howard filed a fee petition seeking $19,342.50 and attached its attorneys' billing records.

¶ 22 Robert reiterated the arguments he made in opposition to DDV's fee petition: (1) the court never appointed Julia or Howard & Howard to act on Leslie's estate's behalf, (2) the appointment

of a GAL and temporary guardians cut off Julia's ability to recover attorney fees after November 20, 2023, and (3) Howard & Howard's work did not benefit Leslie's estate.

¶ 23    The GAL argued that Howard & Howard "came into this case late when the parties were discussing settlements" and therefore provided little benefit to Leslie's estate. The GAL requested that the circuit court reduce Howard & Howard's fees accordingly.

¶ 24    Howard & Howard's reply argued that the firm was "instrumental in settling this matter," thereby benefitting Leslie and her estate.

¶ 25                              3. Fee Petition Hearing and Rulings

¶ 26    On February 27, 2025, the same day that it vacated the agreed settlement orders, the circuit court held oral argument on the fee petitions.

¶ 27                              a. DDV's Fee Petition

¶ 28    DDV argued that its work leading to the appointment of temporary guardians was "essential during an extremely difficult time for this family." According to DDV, the temporary guardians improved Leslie's quality of life and restored her visitation with Julia, which Robert allegedly prevented. DDV maintained that Julia's concerns about Robert's influence over Leslie were reasonable, as Robert had his cognitively impaired sister sign estate planning documents that gave him significant power over her affairs.

¶ 29    The GAL maintained that DDV filing the guardianship petition on Julia's behalf benefitted the estate because Leslie "probably didn't have the requisite ability to understand" the estate planning documents she signed in June and November 2023. The GAL explained that the guardianship petition "was important because it paused everything" and resulted in the appointment of temporary guardians. However, the GAL maintained that DDV's billing was

excessive. As an example, the GAL explained that DDV's attorneys sometimes billed so many hours in a day that they could not have slept or eaten the entire day. The GAL described the fees DDV sought as "extraordinary" and maintained that "too much time was spent on things that just didn't matter or just didn't benefit Leslie."

¶ 30    Robert argued that DDV should not recover any attorney fees because DDV obtained none of the relief that Julia sought. Rather, Leslie's estate was in essentially the same position as it was before DDV filed the guardianship petition. Robert contended that if DDV should recover attorney fees from anyone, it should be Julia, not Leslie's estate.

¶ 31    Howard & Howard acknowledged that DDV "did do good work" in the early stages of the case but argued that most of DDV's work thereafter did not benefit Leslie's estate. Howard & Howard requested that the court reduce DDV's fees to approximately $30,000.

¶ 32    The court awarded DDV $41,819.25 in attorney fees and costs, payable from Leslie's estate. The court initially expressed doubt that DDV's litigation benefited the estate but accepted the GAL's position that at least some of DDV's work provided benefits in terms of reuniting Leslie and Julia. The court also stated that it reviewed DDV's billing records and found many billing entries excessive or unsupported. For example, DDV claimed $5 in filing fees the clerk did not actually charge and billed for 12 minutes of work just for filing pleadings. As another example, DDV billed 16.7 hours for drafting the guardianship petition, which was excessive for experienced attorneys in a relatively straightforward case. The court identified numerous other examples of DDV's overbilling. The court compared DDV's petition, which sought approximately $139,000 for six months of work, to Howard & Howard's petition, which sought just $19,000 for three to

four months of work. The court concluded that only $41,819.25 of DDV's requested fees and costs "went to any benefit of Leslie Burns."

¶ 33                    b. Howard & Howard's Fee Petition

¶ 34    Howard & Howard argued that its work benefitted Leslie's estate because it "entered into a settlement agreement that although undone *** did bring peace to this case." Howard & Howard maintained that it handled the case efficiently and did the best it could with the situation it inherited from DDV.

¶ 35    Robert argued that Howard & Howard's work resulted in "no outcome benefitting the estate" because the circuit court vacated the settlement Howard & Howard negotiated. Therefore, Robert contended, Howard & Howard should not recover any fees.

¶ 36    The court granted Howard & Howard's fee petition in full, awarding $19,342.50 payable from Leslie's estate. The court found that "Leslie Burns'[s] estate was benefitted when [Howard & Howard] came in" on the eve of trial and quickly settled the case. Although the court vacated that settlement, Howard & Howard's involvement ultimately brought the case to its conclusion and left Leslie in a stable situation.

¶ 37    Robert timely appealed the attorney fee awards to DDV and Howard & Howard.

¶ 38                        II. ANALYSIS

¶ 39    Robert challenges the circuit court's attorney fee awards to DDV and Howard & Howard. He does not contest the amounts the circuit court awarded. Rather, Robert contends that the circuit court should not have awarded *any* attorney fees because (1) the court never appointed Julia or her attorneys to represent the estate, (2) Julia and her attorneys provided no benefit to Leslie's estate,

- 8 -

and (3) the court's appointment of a GAL and temporary guardians cut off Julia's ability to recover attorney fees after November 20, 2023.

¶ 40    Robert filed an opening brief and a reply brief. DDV, which no longer represents Julia, filed its own appellee brief. Howard & Howard withdrew from representing Julia in this appeal and did not file a brief. However, Julia filed an appellee brief *pro se*.

¶ 41                                A. Jurisdiction

¶ 42    We first address our jurisdiction because Robert's notice of appeal and his opening brief invoke two different Supreme Court Rules as jurisdictional bases.

¶ 43    Robert's notice of appeal cites only Rule 303, which governs appeals from final judgments. Ill. S. Ct. R. 303 (eff. July 1, 2017). However, his brief submits that this court "has jurisdiction over the appeal pursuant to Supreme Court Rule 304(b)(1) because this is an appeal from orders awarding attorney fees that were entered in the administration of a guardianship." DDV and Julia agree that we have jurisdiction under Rule 304(b)(1).

¶ 44    Rule 304(b)(1) provides that a "judgment or order entered in the administration of an estate, guardianship or similar proceeding which finally determines the right or status of a party" is immediately appealable without a finding that Rule 304(a) would otherwise require. Ill. S. Ct. R. 304(b)(1) (eff. March 8, 2016). Rule 304(b)(1) applies to rulings on attorney fees in guardianship cases. *In re Estate of O'Gara*, 2022 IL App (1st) 210709, ¶ 32 (citing *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 473 (2000)). Therefore, we have jurisdiction under Rule 304(b)(1).

¶ 45    The fact that Robert's notice of appeal mistakenly cites Rule 303 instead of Rule 304(b)(1) does not deprive us of jurisdiction. "[T]his court is not bound by the rule invoked in a notice of appeal, and we are not deprived of jurisdiction by an appellant's citation to the wrong rule therein."

*Pnevmatikos v. Pappas*, 2025 IL App (1st) 230739, ¶ 36 (citing *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 211 (1996)). The timely filing of a notice of appeal is generally "the only jurisdictional step required to perfect an appeal." *In re D.D.*, 212 Ill. 2d 410, 417 (2004). Here, Robert timely filed his notice of appeal on March 12, 2025, challenging the attorney fee orders of February 27, 2025. See Ill. S. Ct. R. 304(b) (eff. March 8, 2016) (the time for filing a notice of appeal pursuant to Rule 304(b) is the same as in Rule 303); Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) (an appellant must file a notice of appeal within 30 days after entry of the challenged judgment). Therefore, we have jurisdiction over this appeal pursuant to Rule 304(b)(1) despite the discrepancy between Robert's notice of appeal and his brief's jurisdictional statement.

¶ 46                              B. Attorney Fees in Guardianship Cases

¶ 47     Section 27-2 of the Probate Act of 1975 governs the award of attorney fees to "representative[s]" in adult guardianship cases. 755 ILCS 5/27-2 (West 2024). However, neither DDV nor Howard & Howard's fee petitions cited section 27-2. On appeal, Julia's *pro se* brief is the only brief that cites section 27-2. Because the parties have largely missed the most important statute in this dispute, we begin by setting out the law governing attorney fees under section 27-2.

¶ 48     Section 27-2 provides that attorneys for "representative[s]" of the estate are entitled to "reasonable compensation" for their services. *Id.* The term "representative" is broad; it includes persons beyond those whom the court appoints to act for the estate and includes heirs and next of kin. *In re Estate of Brooker*, 2023 IL App (2d) 230138-U, ¶ 34 (citing *Estate of Roselli*, 70 Ill. App. 3d 116, 123 (1979)).[1] A representative need not be successful to recover attorney fees as long

---

[1]We cite unpublished decisions issued after January 1, 2021, as persuasive authority. Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025).

as the representative benefited the estate in some way. *Id.* (citing *In re Estate of Byrd*, 227 Ill. App. 3d 632, 639 (1992)); see also *In re Estate of Martin*, 2020 IL App (2d) 190140, ¶ 42 ("An attorney for a person seeking guardianship is entitled to attorney fees, whether his or her petition is successful or not."). A court may order the estate to pay the representatives' attorney fees. *In re Estate of Elias*, 408 Ill. App. 3d 301, 323 (2011).

¶ 49    Courts determine what constitutes reasonable attorney fees on a case-by-case basis. *In re Estate of Weeks*, 409 Ill. App. 3d 1101, 1109 (2011). The circuit court has broad discretion in awarding attorney fees, and we will not reverse the fee award unless the court abuses its discretion. *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991). A court abuses its discretion "when its ruling 'is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23 (quoting *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)). Some appellate decisions indicate that we review an award of attorney fees under section 27-2 for manifest error rather than for an abuse of discretion. See, *e.g.*, *In re Estate of Bitoy*, 395 Ill. App. 3d 262, 272 (2009); *Matter of Estate of Shull*, 295 Ill. App. 3d 687, 691 (1998). We follow our supreme court's general rule that we review attorney fee awards for an abuse of discretion, but we would affirm under either standard.

¶ 50                              C. Representative Status

¶ 51    Robert contends that the circuit court abused its discretion in awarding fees because Julia, DDV, and Howard & Howard never "obtained the express power and authority from the trial court to bind Leslie or her estate."

¶ 52    Robert's brief does not develop this argument beyond stating that he raised it in his objections to the fee petitions in the circuit court. Robert has forfeited this undeveloped argument.

See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 (Contentions without reasoned argument do not merit consideration); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited."). Robert's reply brief develops this argument somewhat, but that does not prevent forfeiture. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are waived and shall not be raised in the reply brief.").

¶ 53    Forfeiture aside, it appears that Robert contends that Julia and her attorneys were not "representatives" within the meaning of section 27-2 because the circuit court never appointed them to any such position; therefore, they cannot now recover attorney fees. We disagree. Illinois authority consistently holds that the definition of "representative" for purposes of section 27-2 is broad, includes heirs, next of kin, and descendants, and is not limited to those legally appointed to act for an estate. See, *e.g.*, *Martin*, 2020 IL App (2d) 190140, ¶ 42; *Roselli*, 70 Ill. App. 3d at 123. As Leslie's daughter, Julia falls into that broad description, so her attorneys can recover fees under section 27-2.

¶ 54    Robert cites *Matter of Estate of Thompson*, 186 Ill. App. 3d 874, 880 (1989), for the proposition that "[t]o properly represent an incompetent individual, *** one must have the express power and authority from the court to act for such person and bind his estate." Read in isolation, that quote appears to support Robert's position. But read as a whole, the *Thompson* case does not. In *Thompson*, this court *affirmed* an award of fees to the attorney who represented the family of the disabled person. *Id.* at 880-81. That holding does not support reversal of the attorney fee awards in this case. Moreover, *Thompson* is distinguishable. In that case, the guardian of the estate requested that the attorney at issue file an appearance for the family to avoid a conflict of interest. *Id.* at 879-80. That did not occur in this case, so *Thompson* offers little guidance. Accordingly, the

circuit court's conclusion that DDV and Howard & Howard can recover attorney fees pursuant to section 27-2 is not an abuse of discretion.

¶ 55                                    D. Benefit to the Estate

¶ 56    Robert's opening brief suggests, without clear argument or citation to authority, that the circuit court abused its discretion in awarding attorney fees because Julia and her attorneys did not benefit Leslie's estate. Robert's reply, however, develops this argument with citation to authority. We could find that Robert forfeited this argument by raising it for the first time in his reply (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 29), but we address it for the sake of completeness.

¶ 57    "A representative need not be successful in order to have her attorney fees paid by the estate, so long as the representation benefited the estate in some way." *Brooker*, 2023 IL App (2d) 230138-U, ¶ 34 (citing *Byrd*, 227 Ill. App. 3d at 639). A court can deny attorney fees under section 27-2 "when the legal services rendered are not in the interest of or do not benefit the estate." *Matter of Estate of Dyniewicz*, 271 Ill. App. 3d 616, 624 (1995).

¶ 58    In this case, the circuit court heard oral argument regarding whether DDV and Howard & Howard's work benefited Leslie's estate. The court accepted the GAL's position that DDV filing the guardianship petition provided a necessary "pause" to appoint temporary guardians and determine whether Robert was exerting undue influence over Leslie. The GAL's purpose is to serve as the court's "eyes and ears" and to make recommendations to the court (*In re Mark W.*, 228 Ill. 2d 365, 374 (2008)), so the circuit court properly relied on the GAL's recommendations in this case. The court also exercised its discretion by awarding DDV fees only for work that

benefited Leslie's estate. The court awarded DDV approximately 30% of its requested fees, a significant reduction that reflects the court's thoughtful exercise of discretion.

¶ 59    The court's ruling on Howard & Howard's fee petition was not an abuse of discretion either. As the circuit court explained, Howard & Howard took over a contentious case that was headed for trial and settled it quickly. Although the court later vacated that settlement, Howard & Howard's involvement led to this case's conclusion and a positive outcome for Leslie. We defer to the circuit court's findings that DDV and Howard & Howard's work benefited Leslie and her estate. See *Daniels v. ArvinMeritor, Inc.*, 2019 IL App (1st) 190170, ¶ 36 (abuse of discretion is the most deferential standard of review). Accordingly, the circuit court's finding regarding the benefits to the estate that Julia's attorneys provided is not an abuse of discretion.

¶ 60                               E. Attorney Fee "Cutoff" Date

¶ 61    Robert also argues that the circuit court should not have awarded attorney fees for work performed after November 20, 2023, because, as of that date, the court had appointed a GAL and temporary guardians of Leslie's person and estate.

¶ 62    Robert relies on *In re Lundahl*, 200 Ill. App. 3d 108 (1990). In that case, Lundahl's adult children filed a petition seeking the court to declare him a disabled person. *Id.* at 109. By December 27, 1988, the circuit court had appointed a guardian of Lundahl's estate and a plenary guardian of his person. *Id.* Approximately seven months later, the petitioners' counsel filed fee petitions seeking compensation for his work before and after the circuit court appointed the guardians on December 27, 1988. *Id.* The circuit court awarded all requested attorney fees. *Id.* at 110.

¶ 63    The guardian of the estate appealed, arguing that the petitioners were not entitled to attorney fees for work performed after December 27, 1988, because, as of that date, "two court-

appointed guardians were already protecting Mr. Lundahl's interests." *Id.* The Second District agreed, finding that

> "the trial court abused its discretion in awarding attorney fees to [the petitioners] where Mr. Lundahl's interests were already adequately protected. To rule otherwise would require Mr. Lundahl's estate to pay [the petitioners'] attorney fees even though his services after December 27, 1988, were not requested or otherwise needed to protect Mr. Lundahl's interests." *Id.* at 111.

Therefore, the Second District affirmed the award of attorney fees for work performed prior to December 27, 1988, but reversed the award of attorney fees for work performed after that date. *Id.*

¶ 64    According to Robert, *Lundahl*'s holding means that when the circuit court appoints any kind of guardian, that cuts off the parties' ability to recover attorney fees thereafter. We disagree. The *Lundahl* court found that the petitioners could not recover attorney fees after the circuit court appointed a *plenary* guardian on December 27, 1988. *Id.* at 109-110. *Lundahl* says nothing about the effect an appointment of a temporary guardian or a GAL has on attorney fees.

¶ 65    Nevertheless, Robert seeks to extend *Lundahl* to cut off attorney fees when the circuit court appoints a GAL or a temporary guardian. But there are important differences between the various types of guardians. A plenary guardian has "exceedingly broad" authority and "makes all decisions and exercises all legal rights on behalf" of the disabled person. *In re K.C.*, 323 Ill. App. 3d 839, 849 (2001); 755 ILCS 5/11a-17, 11a-18 (West 2024) (setting out the duties of plenary guardians). By contrast, a temporary guardian has only "limited powers and duties *** specifically enumerated by court order" and such an appointment expires 60 days after appointment or when a plenary

guardian is appointed, whichever occurs earlier. 755 ILCS 5/11a-4(a), (b) (West 2024). A GAL does not represent the allegedly disabled person. *Mark W.*, 228 Ill. 2d at 374. Rather, a GAL serves as the "eyes and ears of the court" and makes recommendations to the court. *Id.* GALs and temporary guardians do not protect the allegedly disabled person's interests to the degree that a plenary guardian does, so *Lundahl*'s reasoning does not apply to this case. Moreover, courts typically appoint GALs and temporary guardians in the early stages of a case. If such appointments cut off the parties' ability to recover attorney fees, then attorneys would go unpaid for most of the work they perform in guardianship cases, thereby undermining the purpose of section 27-2.

¶ 66    Additionally, we question *Lundahl*'s precedential value. Section 27-2 became effective on January 1, 1976, so it was in effect when the Second District decided *Lundahl* in 1990. Yet *Lundahl* did not discuss or even acknowledge that section. Section 27-2 states that the "attorney for a representative is entitled to reasonable compensation for his services" without limitation as to procedural posture or appointment of guardians. See 755 ILCS 5/27-2(a) (West 2024). Reasonableness, not the date on which the circuit court appointed a guardian, governs attorney fees. And the overarching principle is that attorney fees are a matter of the circuit court's discretion (*Callahan*, 144 Ill. 2d at 43-44), not a matter of the case's procedural posture. Illinois authority is contrary to *Lundahl*'s "plenary guardian cutoff" for section 27-2 attorney fees. No published decision cites *Lundahl*. Given *Lundahl*'s outlier status and questionable reasoning, we decline to follow it.

¶ 67    Instead of section 27-2, *Lundahl* relied on *Matter of Estate of Kutchins*, 169 Ill. App. 3d 641 (1988), which Robert cites as well. *Kutchins* suffers from the same flaw as *Lundahl* in that it does not even acknowledge section 27-2. Unlike those cases, we rely on section 27-2 and the cases

interpreting it. Accordingly, we affirm the trial court's award of attorney fees after November 20, 2023.

¶ 68                                    F. Rule 375(b) Sanctions

¶ 69    Finally, Julia requests us to sanction Robert pursuant to Supreme Court Rule 375(b) (eff. Feb. 1, 1994), because "[t]his appeal is objectively unreasonable and imposes needless costs." Rule 375(b) provides:

>        "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

Imposing sanctions under Rule 375(b) is within this court's discretion. *Goldfarb v. Bautista Concrete, Inc.*, 2019 IL App (1st) 172968, ¶ 20.

¶ 70    We do not understand Julia's basis for requesting sanctions. She appears to claim that the record supports her version of events regarding the underlying merits of this case, which are not

at issue in this appeal, but she also insists that the record is somehow incomplete. This paragraph from her brief is particularly confusing:

> "To be precise: the current record may not contain a specific citation showing that estate or trust funds financed this appeal. Appellee does not ask the Court to assume that fact. Instead, consistent with trustee-reimbursement limits and equitable allocation principles, Appellee requests prophylactic and remedial measures that prevent any shifting of appellate costs to the ward and require personal responsibility by Appellant if such funds were or are sought to be used."

¶ 71    In any event, we do not find that this appeal is "not reasonably well grounded in fact [or] not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). One case, *Lundahl*, supports Robert's objection to the attorney fee awards. Although we do not agree with *Lundahl* for the reasons stated above, it provides some legal basis for Robert's position. In addition, the circuit court's skepticism about the benefit Julia's attorneys provided and its concerns about DDV's overbilling suggest that Robert had a good-faith basis for filing this appeal even though we do not rule in his favor. Accordingly, we decline to impose Rule 375(b) sanctions against Robert.

¶ 72                                    III. CONCLUSION

¶ 73    For the foregoing reasons, we affirm the circuit court's attorney fee awards to DDV and Howard & Howard.

¶ 74    Affirmed.